UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

STATE OF MISSISSIPPI                                              PLAINTIFF

V.                                  CIVIL ACTION NO. 3:24-CV-718-KHJ-MTP

OPTUM, INC., et al.                                             DEFENDANTS

ORDER

Before the Court is Plaintiff the State of Mississippi's [12] Motion to Remand. For the reasons stated below, the Court denies the motion.

I.      Background

This case arises from a state-court suit filed by Mississippi against various pharmacy benefit managers (PBMs) for their alleged roles in creating and sustaining an opioid epidemic in the state. *See* Compl. [1-4] ¶ 17. Mississippi served Defendants Express Scripts, Inc., Express Scripts Pharmacy, Inc., ESI Mail Pharmacy Service, Inc. (collectively, "Express Scripts"), and OptumRx, Inc., on or after October 9, 2024. Joint Notice Removal [1] at 4. On November 8, Express Scripts and OptumRx (collectively, "the PBM defendants") removed the suit to this Court, invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See id.* at 1–2.

Before discussing Mississippi's allegations, the Court provides some context on PBMs. Health insurance plans hire PBMs to serve as intermediaries between the plans and the pharmacies that beneficiaries use. *Rutledge v. Pharm. Care Mgmt.*

*Ass'n*, 592 U.S. 80, 83–84 (2020). So when "a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information." *Id.* at 84. And after "the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment." *Id.* The plan then reimburses the PBM. *Id.*

PBMs offer other services as well. [1] at 4–5. They negotiate with pharmaceutical manufacturers for rebates on prescription drugs, and they develop formularies and utilization management tools for their clients. *Id.* at 5; *see also* [1-4] ¶ 24. "Formularies are lists of drugs covered by a pharmacy benefit plan," and they "are often constructed in tiers, where drugs listed on higher tiers require larger copays . . . ." [1-4] ¶ 24. Since lower-tier drugs cost less than higher-tier drugs, consumers "are more likely to utilize drugs that have been placed on lower cost tiers . . . ." *Id.* ¶ 110. On the other hand, utilization management tools regulate some drugs by limiting coverage unless doctors follow certain safeguards in prescribing them. *See id.* ¶ 24.

Mississippi alleges that the PBM defendants played a key role "in facilitating the oversupply of opioids" by "colluding with Purdue Pharma and other opioid manufacturers to increase opioid sales . . . ." *Id.* ¶¶ 17, 20; *see also id.* ¶ 125. According to Mississippi, the PBM defendants colluded, in part, by "negotiat[ing] rebate payments, fees, and other incentives from drug manufacturers in exchange for preferential placement of their drugs on PBM formularies." *Id.* ¶ 117; *see also id.*

¶ 20. Thus, Mississippi has sued the PBM defendants for public nuisance, negligence, violations of Mississippi consumer protection law, and unjust enrichment. *Id.* ¶¶ 166–258.

The PBM defendants offer their services to both federal and nonfederal health plans that cover Mississippi residents. *See* Mem. Supp. Resp. [21] at 19, 21. Express Scripts contracts with the U.S. Department of Defense (DOD) to administer the military's TRICARE Home Delivery/Mail Order Pharmacy. [1] at 8. Likewise, Express Scripts, Inc. contracts with the U.S. Office of Personnel Management (OPM) to provide PBM services for health plans under the Federal Employees Health Benefits Act of 1959 (FEHBA). *Id.* at 11. And lastly, OptumRx contracts with the U.S. Department of Veterans Affairs (VA) to provide PBM services for the Veterans Health Administration's (VHA) health plans. *Id.* at 13–14.

These federal contracts impose requirements on the PBM defendants. For example, Express Scripts' TRICARE work is governed by a comprehensive, 174-page Statement of Work. *Id.* at 8; *see also* DOD Statement of Work [1-2]. The DOD and VHA both require the PBM defendants to use premade formularies while each FEHBA plan also controls what medications go on its formulary. [1] at 8, 12, 14. And since the FEHBA plans expect the PBM defendants to negotiate for rebates on the medications they place on their formularies, OPM specifically regulates certain aspects of those negotiations. *Id.* at 12; *see also* FEHB Standard Cont. [1-3] at 26–27.

In their [1] Joint Notice of Removal, the PBM defendants contend that Mississippi seeks to hold them liable for acts they performed at the direction of federal officers. [1] at 2. They argue that since Mississippi challenges their conduct in negotiating rebates and developing formularies for their clients, this case relates to their federal work. *See* [21] at 21. Mississippi disagrees, arguing that it expressly and thoroughly waived all claims for relief relating to the PBM defendants' work for the federal government. Mem. Supp. Mot. [13] at 10–13; *see also* [1-4] ¶¶ 33–34, 102–04. Even so, the PBM defendants assert that they performed negotiations for both their federal and nonfederal clients at the same time and developed generalized formularies to offer to all their clients. [21] at 21. Therefore, the PBM defendants claim that Mississippi cannot challenge their nonfederal work without also implicating their federal work. *See id.*

II.    Standard

Normally, a defendant may remove a state-court action to federal district court only if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Original jurisdiction exists if "the plaintiff could have filed its operative complaint in federal court, either because it raises claims arising under federal law or because it falls within the court's diversity jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019); *see also* 28 U.S.C. §§ 1331–1332. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the court must remand the case to state court. 28 U.S.C. § 1447(c). The removing party "bears the burden of showing that federal jurisdiction exists and

that removal was proper." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (cleaned up). And courts strictly construe the removal statute, resolving any doubts about the propriety of removal in favor of remand—especially when a state brings a case in its own courts. *Wilson v. Kemper Corp. Servs., Inc.*, 134 F.4th 339, 347 (5th Cir. 2025); *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 85 (5th Cir. 2013) (per curiam).

But "[s]uits against federal officers are exceptional . . . ." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). "[A]ny officer (or any person acting under that officer) of the United States" may remove an action "for or relating to any act under color of such office . . . ." § 1442(a)(1). Even "where the parties are not diverse and no federal question is raised in the complaint, [Section] 1442 allows a case to be removed if the federal actor asserts a federal defense." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024).[1] So a private entity may remove an action under Section 1442 if "(1) the defendant has asserted a colorable federal defense; (2) the defendant is a 'person' within the meaning of the statute; (3) the defendant acted pursuant to a federal officer's directions; and (4) the charged

---

[1] Ordinary federal-question jurisdiction—sometimes called "arising under" jurisdiction—stems from Section 1331, which confers "jurisdiction on federal courts to resolve cases 'arising under' federal law." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (quoting § 1331). Under the well-pleaded complaint rule, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law. Federal jurisdiction cannot be predicated on an actual or anticipated defense." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (cleaned up). The federal officer removal statute creates an exception to this rule. *See Mesa v. California*, 489 U.S. 121, 136 (1989). Section 1442 permits a federal defense to supply the federal question that vests a court with jurisdiction. *See id.*

conduct is connected or associated with an act pursuant to a federal officer's directions." *Martin*, 101 F.4th at 414.

While the removing party still has the burden to establish jurisdiction, "federal officer removal is not narrow or limited." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019) (cleaned up). Courts "broadly construe the federal officer removal statute in favor of a federal forum." *Martin*, 101 F.4th at 414. Co-defendants need not consent to removal. *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014). And Section 1442 permits removal of an entire case even if only one claim satisfies the statute. *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 & n.4 (5th Cir. 2018).

III.    Analysis

This case meets the requirements for federal officer removal. The PBM defendants argue that the Court has both federal officer removal jurisdiction, [1] at 6 (citing § 1442(a)(1)), and "arising under" jurisdiction, *id.* at 27 (citing §§ 1331, 1441).[2] Mississippi responds that it waived any claims that could support federal officer removal and that its state-law claims do not implicitly raise any federal questions. [13] at 6, 10, 17. Despite Mississippi's Section 1442 disclaimer, this action meets the requirements for federal officer removal. Since the Court has federal officer removal jurisdiction, the Court need not decide whether "arising under" jurisdiction also exists here.

---

[2] Mississippi's presence here precludes diversity jurisdiction. *See New Orleans City v. Aspect Energy, L.L.C.*, 126 F.4th 1047, 1055 (5th Cir. 2025).

In considering federal officer removal jurisdiction, the Court first turns to the central, "threshold question" of this case: "whether federal officer jurisdiction is even implicated" given Mississippi's Section 1442 disclaimer. *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.* (*St. Charles II*), 990 F.3d 447, 451 (5th Cir. 2021). Concluding that the disclaimer does not remove this case from Section 1442's ambit, the Court then considers whether this case meets the four requirements for federal officer removal. Mississippi concedes that the PBM defendants qualify as "person[s]." Reply [23] at 3 n.4; *see also Butler*, 926 F.3d at 201. So the Court takes up the three remaining requirements in turn.

A.  Mississippi's Section 1442 Disclaimer

Mississippi's disclaimer cannot stave off federal officer removal. Mississippi has expressly waived "relief from any [d]efendant that is available pursuant to any claim(s) involving a federal government agency, federal officer, or federal government contracting officer associated with any . . . [federal] health benefits plan or federal health insurance program." [1-4] ¶ 102; *see also id.* ¶¶ 33–34, 103, 104. According to Mississippi, this disclaimer narrows the [1-4] Complaint's allegations to challenge only acts unrelated to a federal directive. *See* [13] at 20–21. And if the [1-4] Complaint targets only such conduct, the PBM defendants cannot raise a colorable federal defense. *See id.* at 20. In short, the disclaimer would prevent this case from satisfying the first and fourth requirements for federal officer removal. *See id.* at 20–21; *Martin*, 101 F.4th at 414. But the PBM defendants plausibly allege that their federal and nonfederal work is indivisible, so Mississippi cannot

challenge their nonfederal work without also challenging their federal work. [21] at 21–26. At this stage, the Court must credit the PBM defendants' theory of the case. *See Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017). So the Court finds the disclaimer ineffective.

Courts respect Section 1442 disclaimers unless they are "merely artful pleading designed to circumvent federal officer jurisdiction." *St. Charles II*, 990 F.3d at 451 (cleaned up). The Fifth Circuit has provided limited guidance on when a Section 1442 disclaimer constitutes artful pleading, *see id.*, but other circuits have examined such disclaimers in more detail. *See, e.g.*, *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187–88 (1st Cir. 2024).[3] As the First Circuit has summarized, a proper disclaimer must explicitly renounce all claims that could support federal officer removal. *Id.* at 187. After all, if "a plaintiff renounces such claims, then a defendant is not entitled to a federal forum in which to raise a defense arising out of his official duties because such a defense pertains to claims that simply do not exist." *Id.* (cleaned up).

With that in mind, courts have identified two types of disclaimers that constitute artful pleading. *See id.* at 187–88. First, circular disclaimers that "forc[e] federal contractors to prove in state court that they were acting under the direction of the federal government" are ineffective. *Id.* (cleaned up); *accord St. Charles II*, 990 F.3d at 451. If the parties dispute the relationship "between the charged

---

[3] *Accord Maryland v. 3M Co.*, 130 F.4th 380, 389–92 (4th Cir. 2025); *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024).

conduct and asserted [federal] authority," the defendant "should have the opportunity to present [its] version of the facts to a federal, not a state, court." *Willingham v. Morgan*, 395 U.S. 402, 409 (1969); *see also Kleinert*, 855 F.3d at 312–13. Circular disclaimers undermine "a defendant's right 'to have the validity of the defense of official immunity tried in a federal court.'" *Express Scripts, Inc.*, 119 F.4th at 188 (quoting *Willingham*, 395 U.S. at 407). Second, illusory disclaimers cannot prevent removal. *See id.* These appear when—despite including a disclaimer—a plaintiff still tries to "hold a defendant liable for its official acts for which it possesses a colorable federal defense." *Id.*; *see also, e.g., Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020).

Thus, a valid disclaimer "must eliminate *any* basis for federal officer removal so that, upon remand, there is no possibility that a state court" would need "to determine the nexus between the charged conduct and federal authority . . . ." *Express Scripts, Inc.*, 119 F.4th at 187–88 (cleaned up); *accord St. Charles II*, 990 F.3d at 451. And the plaintiff's allegations must not contradict the disclaimer by seeking to hold a defendant liable for federally connected conduct. *Express Scripts, Inc.*, 119 F.4th at 188 (citing *Reinbold v. Advanced Auto Parts, Inc.*, No. 3:18-CV-605, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018) (collecting cases)). In determining whether the charged conduct relates to a federal officer's directions, a court must credit a removing defendant's theory of the case. *See Kleinert*, 855 F.3d at 312.

The Court finds Mississippi's disclaimer both circular and illusory. Mississippi claims that the PBM defendants "fueled and sustained" the opioid epidemic "by colluding with opioid manufacturers to make opioids more available . . . ." [1-4] ¶ 125; *see also id.* ¶¶ 20–21. The [1-4] Complaint alleges that the PBM defendants "negotiate[d] rebate payments, fees, and other incentives from drug manufacturers in exchange for preferential placement of their drugs on PBM formularies." *Id.* ¶ 117. The PBM defendants respond that they performed these rebate negotiations collectively "for [their] entire books of business that included both federal and non-federal clients . . . ." [21] at 24. Separate federal and nonfederal negotiations did not occur. *Id.* at 26. Thus, the PBM defendants argue that Mississippi challenges indivisible conduct because they "performed [it] *at the same time* with respect to both federal and non-federal clients." *Id.*

Citing its disclaimer, Mississippi counters that its allegations target only the PBM defendants' "conduct in the non-federal market"—that is, the parts of the collective negotiations that the PBM defendants performed for nonfederal clients. [13] at 13. But can Mississippi challenge just the nonfederal parts of the collective negotiations without catching any federally connected conduct in the crossfire? No. The Court must accept that the PBM defendants performed a single set of rebate negotiations simultaneously on behalf of federal and nonfederal clients. [21] at 21, 23–24, 26. When determining whether a suit "is connected or associated with an act pursuant to a federal officer's directions," the Court must look to the "charged conduct." *Martin*, 101 F.4th at 414.

So are the negotiations part of the charged conduct here? Yes. And are the nonfederal aspects of those negotiations "connected or associated with an act pursuant to a federal officer's directions"? *Id.* Yes. Since the PBM defendants were negotiating for federal and nonfederal clients at the same time, the nonfederal negotiations were "connected or associated with" the federal negotiations. *Id.; see also Express Scripts, Inc.*, 119 F.4th at 191. Indeed, they were the same negotiations. This renders Mississippi's disclaimer illusory.

Moreover, the PBM defendants argue that federal directives impacted how they conducted the rebate negotiations for their nonfederal clients. *See* [1] at 12. Mississippi protests that it can target just the nonfederal aspects of the negotiations because those negotiations produced "formularies that . . . can vary from client to client, with the federal formularies strictly dictated by federal requirements and non-federal formularies varying based on each client's individual choices without regard to federal requirements." [13] at 15. But the PBM defendants allege that when they negotiated rebate agreements for nonfederal (and federal) clients, they did so with federal requirements in mind. *See* [1] at 12.

Federal clients "control what medications are on their formularies" and "expect [the PBM defendants] to negotiate with manufacturers to obtain discounts" on those medications. *Id.* So the PBM defendants structured rebate agreements to "cover a range of different clients and different formulary possibilities, including standard and custom formularies." *Id.* That's because the PBM defendants "do[] not have separate rebate agreements with opioid manufacturers" for federal and

11

nonfederal clients. *Id.* The upshot is that federal requirements influenced how the PBM defendants negotiated the rebates and structured the formularies they then offered to their nonfederal clients. Thus, those rebates and formularies are "connected or associated with" federal directives. *Martin*, 101 F.4th at 414.

While Mississippi may dispute whether federal requirements influenced the rebates and formularies the PBM defendants offered their nonfederal clients, the PBM defendants "should have the opportunity to present their version of the facts to a federal, not a state, court." *Willingham*, 395 U.S. at 409. Despite the disclaimer, a state court on remand would have "to determine the nexus between the charged conduct and federal authority" by deciding which rebates or formularies relate to federal directives. *Express Scripts, Inc.*, 119 F.4th at 188 (cleaned up). Section 1442 commits that inquiry to the federal courts. This renders Mississippi's disclaimer circular.

In defense of its disclaimer, Mississippi cites several district court decisions crediting disclaimers in factually similar cases.[4] For several reasons, the Court

---

[4] [13] at 12 & n.19 (first citing *West Virginia ex rel. McCuskey v. Eli Lilly & Co.*, No. 5:24-CV-143, 2024 WL 4357749, at *4–6 (N.D.W. Va. Sept. 6, 2024), *appeal docketed*, No. 24-1924 (4th Cir. Sept. 24, 2024); then citing *Ohio ex rel. Yost v. Ascent Health Servs. LLC*, No. 2:23-CV-1450, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024), *appeal docketed*, No. 24-3033 (6th Cir. Jan. 16, 2024); then citing *Westchester County v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 224–27 (S.D.N.Y. 2024), *appeal docketed*, No. 24-1639 (2d Cir. June 21, 2024); and then citing *Nassau County v. Mylan Pharms., Inc.*, No. 2:23-CV-5382, 2024 WL 3298500, at *5–6, *6 n.6 (E.D.N.Y. July 4, 2024), *appeal docketed*, No. 24-1839 (2d Cir. July 9, 2024)); [23] at 3–4, 4 n.7 (citing *Arkansas ex rel. Griffin v. Optum, Inc.*, No. 4:24-CV-701, slip op. at 4–8 (E.D. Ark. Dec. 31, 2024), *appeal docketed*, No. 25-1165 (8th Cir. Jan. 31, 2025)); Pl.'s First Notice Supp'l Auth. [26] (attaching *Nevada v. Optum, Inc.*, No. 2:24-CV-493, 2025 WL 947041 (D. Nev. Mar. 30, 2025), *appeal docketed*, No. 25-2234 (9th Cir. Apr. 7, 2025)); Pl.'s Second Notice Supp'l Auth. [29] at 2 (citing *Hawai'i ex rel. Lopez v.*

respectfully disagrees with those decisions. From the start, most of the cases cited by Mississippi echo the reasoning of two now-reversed cases. *See, e.g.*, *McCuskey*, 2024 WL 4357749, at *5–6 (first quoting *Puerto Rico v. Eli Lilly & Co.* (*Eli Lilly II*), No. 3:23-CV-1127, 2023 WL 4830569, at *2 (D.P.R. July 13, 2023), *rev'd sub nom. Express Scripts, Inc.*, 119 F.4th 174; and then quoting *California v. Eli Lilly & Co.* (*Eli Lilly I*), No. 2:23-CV-1929, 2023 WL 4269750, at *6 (C.D. Cal. June 28, 2023), *rev'd sub nom. California v. CaremarkPCS Health LLC*, No. 23-55597, 2024 WL 3770326 (9th Cir. Aug. 13, 2024) (per curiam)). In *Eli Lilly I*, the court rejected an indivisibility argument like the one made here, stating that the

> argument, when carried to its logical end, assumes that any organization that contracts with the government, including for services that are also available to private organizations, may *always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations, even if the government services are not at issue.

2023 WL 4269750, at *6; *accord Westchester County*, 737 F. Supp. 3d at 226; *Nassau County*, 2024 WL 3298500, at *6. The Court disagrees. *See Express Scripts, Inc.*, 119 F.4th at 193.

The PBM defendants do not argue for removal just because they perform some portion of their work for both federal and nonfederal clients. Again, courts must determine whether "the *charged conduct* is connected or associated with an act pursuant to a federal officer's directions." *Martin*, 101 F.4th at 414 (emphasis added). When the charged conduct might include some acts performed for federal

---

*CaremarkPCS Health, L.L.C.*, No. 1:23-CV-464, 2025 WL 1218598, at *9–11 (D. Haw. Apr. 28, 2025), *appeal docketed*, No. 25-3102 (9th Cir. May 14, 2025)).

clients and others performed for nonfederal clients, a disclaimer may narrow the charged conduct to exclude federally connected acts. But if the charged conduct includes an act performed simultaneously for both federal and nonfederal clients, a disclaimer cannot disconnect the act from its nexus to federal authority. *See CaremarkPCS Health LLC*, 2024 WL 3770326, at *2 (Ikuta, J., concurring). Even when the plaintiff targets the act's nonfederal results, the charged conduct still includes the act itself, which remains connected to federal directives. *See id.*

Similarly, the Court disagrees with *Eli Lilly II*, which determined that "[j]ust because [PBMs] conduct business in a particular way, i.e. negotiations with manufacturers do not take place on a plan-by-plan basis, does not mean that they cannot conduct negotiations differently . . . ." 2023 WL 4830569, at *2; *accord McCuskey*, 2024 WL 4357749, at *5–6; *Yost*, 2024 WL 23187, at *3. Seizing upon this logic, Mississippi contends that when the PBM defendants "voluntarily [chose], for their own business reasons, to engage in undifferentiated negotiations, their acts on behalf of the private clients did not lose their character as acts on behalf of those private clients, because they were not required by the federal agencies to negotiate in that fashion." [13] at 13. Not so. In fact, quite the opposite is true: Federally connected acts do not lose their federal connection just because a federal contractor also performed those acts for nonfederal clients. *See CaremarkPCS Health LLC*, 2024 WL 3770326, at *2 (Ikuta, J., concurring). Under Section 1442, courts determine only whether the charged conduct relates to federal directives—not

whether a contractor could have performed that conduct in a way unrelated to those directives. *See Martin*, 101 F.4th at 414.

*Eli Lilly II* also relied on the assumption that a state court could "divid[e] the work done by Defendants on behalf of the federal government from the work done for [their] private clients . . . ." 2023 WL 4830569, at *2; *accord Westchester County*, 737 F. Supp. 3d at 226; *Nassau County*, 2024 WL 3298500, at *6; *McCuskey*, 2024 WL 4357749, at *5–6; *Yost*, 2024 WL 23187, at *3. And more explicitly, *Westchester County* reasoned that "[i]f, as the Removing Defendants predict, it proves impossible to disaggregate the harm from opioids distributed under federal programs from the harm from other opioids, that will redound to Plaintiffs' detriment, as . . . the state court will enforce Plaintiffs' disclaimer." 737 F. Supp. 3d at 227. But leaving a state court to determine what conduct relates to federal directives would force the PBM defendants to litigate the applicability of their federal defenses in state court. And this "would trample a 'primary purpose' of [Section] 1442(a)(1): 'to have such defenses litigated in the federal courts.'" *Express Scripts, Inc.*, 119 F.4th at 192 (cleaned up) (quoting *Willingham*, 395 U.S. at 407).

While *Griffin*, *Optum, Inc.*, and *Lopez* do not rely on *Eli Lilly I* or *II*, the Court disagrees with those cases as well. *See Griffin*, slip op. at 4–8; *Optum, Inc.*, 2025 WL 947041, at *7; *Lopez*, 2025 WL 1218598, at *9–11. In *Griffin*, Arkansas sued various PBMs. *Griffin*, slip op. at 1. It contended—as Mississippi does here— that the defendants "colluded with drug companies in fraudulent and deceptive marketing to oversupply opioids." *Id.* at 4. The defendants argued—as the PBM

defendants do here—that their federal and nonfederal rebate negotiations were indivisible. Defendants' Response in Opposition at 21–25, *Griffin*, No. 4:24-CV-701 (E.D. Ark. Sept. 30, 2024), ECF No. 27. But the *Griffin* court did not mention the defendants' collective rebate negotiations. *See Griffin*, slip op. at 4. So the court did not acknowledge the defendants' theory of the case or analyze whether the collective negotiations were indivisible. *See id.* at 4–8. Instead, the court concluded that

> [e]ven though federal and non-federal activities are arguably intertwined in this case . . . , the state court will not have to determine whether or not Defendants acted under the direction of the government as it relates to the alleged scheme. Instead, the relevant inquiry is limited to what extent the alleged scheme impacted patients who participated in a federal plan.

*Id.* at 7. After discussing how the First Circuit held the rebate negotiations indivisible in *Express Scripts, Inc.*, the court in *Griffin* then stated: "Here, [Arkansas's] disclaimer is not 'incomplete,' because the alleged scheme is not indivisible conduct." *Id.* at 8.

This Court cannot determine how the negotiations at issue in *Griffin* were any less indivisible than those in *Express Scripts, Inc.* In both cases, the defendants claimed that the same rebate negotiations were indivisible, and the *Griffin* court did not explain why the negotiations were "not indivisible conduct." *Id.* Thus, the Court remains persuaded that it must credit the PBM defendants' theory of the case at this point. *See Express Scripts, Inc.*, 119 F.4th at 189; *accord Kleinert*, 855 F.3d at 312.

The Court also disagrees with *Optum, Inc.*, which compared Nevada's disclaimer to the one used by California in *Eli Lilly I. See Optum, Inc.*, 2025 WL

947041, at *7. The court in *Optum, Inc.* found Nevada's disclaimer specific enough to defeat federal officer removal. *Id.* But when a PBM claims "that it engages in a single rebate negotiation on behalf of both private clients and the federal government," then "no disclaimer, however worded," can sever the connection "between [the PBM's] conduct on behalf of the federal government and [the plaintiff's] claims." *CaremarkPCS Health LLC*, 2024 WL 3770326, at *2 (Ikuta, J., concurring); *accord Express Scripts, Inc.*, 119 F.4th at 191. If the PBM "were liable for negotiating rebates on behalf of private clients, it would necessarily also be liable for negotiating rebates on behalf of the federal government—because it is the same negotiation." *CaremarkPCS Health LLC*, 2024 WL 3770326, at *2 (Ikuta, J., concurring); *accord Express Scripts, Inc.*, 119 F.4th at 191.

Lastly, the Court finds *Lopez* distinguishable and disagrees with its conclusion that Hawaiʻi's disclaimer could prevent federal officer removal. *See Lopez*, 2025 WL 1218598, at *9, *11. First, the *Lopez* court applied the Ninth Circuit's "causal nexus" test in determining that Hawaiʻi's claims did not relate to federally directed conduct. *See id.* at *4. Since the federal government did not require the PBMs to engage in collective rebate negotiations, the court concluded that the nonfederal aspects of the negotiations did not occur "because of" federal directives. *Id.* at *9. But the Fifth Circuit has abandoned the "causal nexus" test for a broader "connected or associated" test. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292, 296 (5th Cir. 2020) (en banc) ("Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or

*associated*, with acts under color of federal office."). So whether the federal government required the PBM defendants to negotiate collectively is irrelevant. They did negotiate collectively, and that means the negotiations themselves are—in fact—connected to federal directives. *See supra* pp. 10–12; *see also infra* Section III.B.3.[5]

Second, the *Lopez* court credited Hawaiʻi's allegation that the PBMs "administer[ed] rebates and pharmacy claims on a plan-by-plan basis." *Id.* at *11 (cleaned up). So it assumed "that any alleged harm that [a PBM's] rebate practices cause to non-FEHBA plans [could] be determined without examining how [the PBM's] rebate practice[s] affect FEHBA plans." *Id.* But a plaintiff cannot avoid the connection between the rebates and federal directives by limiting the charged conduct to include only the rebates used by nonfederal clients. Federal and nonfederal clients use the same rebates, and those rebates were structured—in part—around the requirements and expectations of federal clients. Thus, the PBM defendants cannot be held liable for the way they structured the rebates without

---

[5] To be clear, the Court would still disagree with *Lopez*'s conclusion under the "causal nexus" test. Under that test, federal officers "need show only that the challenged acts occurred *because of* what they were asked to do by the Government." *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017) (cleaned up). "In the language of law," the words "because of" incorporate "the simple and traditional standard of but-for causation." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020) (cleaned up). "That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause." *Id.* "This can be a sweeping standard." *Id.* Under the PBM defendants' theory of the case, their federal clients expected them to negotiate rebates on certain drugs. *See* [1] at 12. So they would not have conducted the collective negotiations that way *but for* federal directives. *See id.*

potentially being held liable for following their federal clients' directions. *See CaremarkPCS Health LLC*, 2024 WL 3770326, at *2 (Ikuta, J., concurring).

In sum, the Court finds that Mississippi's disclaimer is circular and illusory, and it cannot prevent federal officer removal. *See Express Scripts, Inc.*, 119 F.4th at 194; *CaremarkPCS Health LLC*, 2024 WL 3770326, at *2 (Ikuta, J., concurring).

### B.  Requirements for Federal Officer Removal

Having dispensed with Mississippi's disclaimer, the Court now turns to whether this case otherwise meets the statutory requirements for federal officer removal. *Martin*, 101 F.4th at 414; *see also* § 1442(a)(1). It does.

#### 1.  Colorable Federal Defense

Express Scripts has alleged a colorable federal defense. A federal defense "is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 346 (5th Cir. 2024) (cleaned up). A removing party need not "win its case before it can have the case removed." *Id.* (cleaned up). The PBM defendants all raise a government contractor defense; Express Scripts raises a TRICARE preemption defense; and Express Scripts, Inc. raises an FEHBA preemption defense. [21] at 32. The Court finds that Express Scripts' government contractor defense—at minimum—is colorable, so it need not consider the other defenses.

Government contractor immunity applies when (1) "the United States approved reasonably precise specifications"; (2) the contractor's performance

"conformed to those specifications"; and (3) the contractor "warned the United States about the dangers" of the specified performance "that were known to the [contractor] but not to the United States." *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 860 (5th Cir. 2021) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). The PBM defendants allege that their federal clients required the use of specific formularies or the placement of specific medications on their formularies. [1] at 8, 12, 14, 25. As a result, the PBM defendants claim that their federal clients expected them to negotiate for discounts on the specified medications. *See id.* at 12. Thus, the PBM defendants assert that they acted in compliance with these contractual requirements or expectations when they negotiated the general rebates and formularies that Mississippi now targets. *See id.* at 25. Finally, Express Scripts expressly alleges that it had no "greater awareness than the federal government did of the dangers of prescription opioids." *Id.*

While OptumRx does not affirmatively allege anything about its awareness of the dangers of opioids, Express Scripts has "stated sufficient facts to make out a colorable *Boyle* defense." *Williams*, 990 F.3d at 861. This suffices for removal. *Morgan*, 879 F.3d at 606 n.4. Additionally, two other courts have found, in similar cases, that the PBM defendants asserted a colorable government contractor defense. *See Cnty. Bd. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 255 (4th Cir. 2021); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2023 WL 166006, at *7 (N.D. Ohio Jan. 12, 2023). Mississippi has only one rejoinder: no federal defense

applies here because it disclaimed all claims related to federal directives. [13] at 20. Because Mississippi's disclaimer fails, so too does this argument.

      2.  Acting Under a Federal Officer

The PBM defendants have satisfied the "acting under" requirement. The "'acting under' inquiry examines the relationship between the removing party and the relevant federal officer." *Caris MPI, Inc.*, 108 F.4th at 347 (cleaned up). Express Scripts alleges that it acted under the DOD when servicing TRICARE health plans; Express Scripts, Inc. alleges that it acted under OPM when servicing FEHBA health plans; and OptumRx alleges that it acted under the VA when servicing VHA health plans. [1] at 11, 13. The Court finds the PBM defendants' relationships with federal officers close enough to sustain federal officer removal jurisdiction.

"A relationship is sufficiently close if the federal officer exercises 'subjection, guidance, or control' over the removing party and that party is assisting or helping carry out a federal officer's duties, as opposed merely to '*complying* with the law.'" *Caris MPI, Inc.*, 108 F.4th at 347–48 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151–52 (2007)). "When a contractor helps the Government perform a job that, 'in the absence of a contract, the Government itself would have had to perform,' and that relationship involves 'detailed regulation, monitoring, or supervision,' the private contractor is 'acting under' a federal officer's direction." *Id.* at 348 (cleaned up) (quoting *Watson*, 551 U.S. at 153–54). "Stated differently: acting pursuant to a federal officer's directions means that the relationship between the government and the private entity extends beyond a regulator/regulated

relationship and will typically involve a contractual agreement or agency relationship." *Martin*, 101 F.4th at 415.

Express Scripts has contracted with the DOD "to provide pharmacy benefits and to administer the TRICARE Home Delivery/Mail Order Pharmacy . . . ." [1] at 8. And the DOD "dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE" through a 174-page Statement of Work. *Id.* Thus, the government exercises guidance and control over Express Scripts' performance, and Express Scripts assists the government with a task that the government would otherwise have to perform itself. Express Scripts meets the "acting under" requirement. *See also Cnty. Bd.*, 996 F.3d at 253; *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *5.

Though only one defendant must meet all the requirements for federal officer removal to remove the entire case, *Morgan*, 879 F.3d at 606 n.4, the same analysis applies to Express Scripts, Inc. and OptumRx's contract work for OPM and VHA, respectively. *See* [1] at 11–15. OPM and the VHA both control how Express Scripts, Inc. and OptumRx perform under their contracts, and these two PBMs provide pharmacy benefit management services to the government that the government would otherwise have to provide for itself. *Id.*; *see also, e.g.*, *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.* (*St. Charles I*), 935 F.3d 352, 356 (5th Cir. 2019) (holding that a contractor was "acting under" OPM when contracted to provide health benefits to federal employees under the FEHBA).

In response, Mississippi argues that the PBM defendants merely engage in "arm's length business arrangements" when servicing TRICARE, FEHBA, and VHA health plans. [13] at 19 (cleaned up). But the PBM defendants are not just selling ready-made goods to the government or "provid[ing] their services within a regulated industry." *Id.* The PBM defendants' government contracts show that they have "a contractual agreement or agency relationship" with the government to help federal agencies carry out their functions. *Martin*, 101 F.4th at 415.

      3.   Civil Action for or Relating to Any Act Under Color of Federal Office

Finally, this suit relates to acts that the PBM defendants took at the federal government's direction. The Court has already elaborated on why Mississippi's disclaimer does not sever its claims from their nexus to federal authority. *See supra* Section III.A. In doing so, the Court noted the nature of that nexus: Mississippi challenges alleged collusion between the PBM defendants and opioid manufacturers to oversupply opioids and maximize profits. [1-4] ¶¶ 117, 125. The PBM defendants claim that these collusion allegations target rebate negotiations they collectively undertook for both federal and nonfederal clients. [21] at 23 (quoting [1-4] ¶ 20). While Mississippi claims to target only the nonfederal side of those negotiations, they still target the negotiations themselves, which relate (at least in part) to the PBM defendants' work for their federal clients. Since the negotiations are connected to federal directives, the PBM defendants have met the "connected or associated" requirement for federal officer removal. *See Caris MPI, Inc.*, 108 F.4th at 348.

*    *    *

Among the PBM defendants, at least Express Scripts meets all four requirements to remove this case under Section 1442. So the Court declines to remand this case.

## IV.    Conclusion

For the reasons stated above, the Court DENIES Mississippi's [12] Motion to Remand. In doing so, the Court has considered all the parties' arguments. Those arguments not addressed would not have altered the Court's decision. Per [16] Order, the parties must promptly notify the Magistrate Judge of this ruling and shall submit a proposed order lifting the stay.

SO ORDERED, this 9th day of June, 2025.

s/ *Kristi H. Johnson*

UNITED STATES DISTRICT JUDGE