# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

State of Mississippi,

       *Plaintiff,*

    v.

Optum, Inc., *et al.*

       *Defendants.*

Case No. 3:24-cv-718-KHJ-MTP

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES....................................................**Error! Bookmark not defined.**

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 2

LEGAL STANDARD .......................................................................... 3

ARGUMENT ...................................................................................... 3

I.   FEDERAL LAW PREEMPTS THE STATE'S CLAIMS RELATING TO
     MEDICARE PART D AND ERISA PLANS. ............................................ 3

II.  THE STATE FAILS TO STATE A CLAIM FOR PUBLIC NUISANCE,
     NEGLIGENCE, OR UNJUST ENRICHMENT. ................................... 7

     A.   The State has not plausibly alleged a public-nuisance claim............ 7

          1.   The State has not alleged any interference with a public right. ............. 8

          2.   The State fails to allege Defendants had control of the instrumentality of
               the alleged nuisance................................................................ 11

          3.   The State has not alleged the requisite special injury to seek damages. ........... 12

          4.   The State has not plausibly alleged a claim for punitive damages....................... 13

     B.   The State has not plausibly alleged negligence. ....................... 14

          1.   The State fails to allege any cognizable duty owed by Defendants. ...................... 14

          2.   The State fails to plausibly allege that Defendants proximately caused its
               alleged injuries. ................................................................... 16

     C.   The State has not plausibly alleged unjust enrichment................. 18

III. THE MISSISSIPPI CONSUMER PROTECTION ACT CLAIM FAILS........................... 20

     A.   The State has not alleged a present or future unfair trade practice............... 20

     B.   The State fails to plead fraud with particularity........................... 21

     C.   The State has not sufficiently alleged a violation of the MCPA................... 23

IV.  THE COURT SHOULD DISMISS THE CORPORATE PARENT ENTITIES. ................. 24

CONCLUSION.................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affordable Care, LLC v. JNM Off. Prop., LLC*,
  2020 WL 3453746 (S.D. Miss. June 24, 2020) ...................................................13

*Alaska v. Express Scripts, Inc.*,
  2024 WL 2321210 (D. Alaska May 22, 2024) ..................................................5, 7

*Andrews v. Enpro Indus., Inc.*,
  2025 WL 837324 (N.D. Miss. Mar. 17, 2025) ................................................8, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................3

*BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*,
  2012 WL 642304 (S.D. Miss. Feb. 27, 2012).......................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................3

*Bennett v. Highland Park Apartments, LLC*,
  170 So. 3d 522 (Miss. Ct. App. 2014),
  *aff'd*, 170 So. 3d 450 (Miss. 2015) .......................................................................16

*Berkley v. Midfirst Bank*,
  2016 WL 2907705 (N.D. Miss. May 18, 2016)......................................................23

*Berry v. Armstrong Rubber Co.*,
  989 F.2d 822 (5th Cir. 1993) .................................................................................8

*Bolton v. Lee*,
  405 So. 3d 1 (Miss. Ct. App. 2023) .........................................................13, 14, 16

*Bosarge v. State ex rel. Price*,
  666 So. 2d 485 (Miss. 1995)..................................................................................12

*Burke v. Shaw*,
  59 Miss. 443 (1882) ..........................................................................................7, 11

*Burley v. Homeowners Warranty Corp.*,
  773 F. Supp. 844 (S.D. Miss. 1990).......................................................................23

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001)...............................................................................9, 10

*Christmas v. Exxon Mobil Corp.*,
    138 So. 3d 123 (Miss. 2014)..................................................................11

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004)........................................................9, 10, 15

*City of Huntington v. AmerisourceBergen Drug Corp.*,
    609 F. Supp. 3d 408 (S.D. W.Va. 2022)..................................9, 17, 18

*City of New Haven v. Purdue Pharma, L.P.*,
    2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019)................................18

*Cole v. Chevron USA, Inc.*,
    554 F. Supp. 2d 655 (S.D. Miss. 2007)..........................................18, 19

*Comer v. Murphy Oil USA, Inc.*,
    839 F. Supp. 2d 849 (S.D. Miss. 2012), *aff'd*, 718 F.3d 460 (5th Cir. 2013)...........17

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*,
    521 So. 2d 857 (Miss. 1988)......................................................7, 8, 9, 12

*Cook v. Allstate Veh. & Prop. Ins. Co.*,
    2024 WL 4594233 (N.D. Miss. Oct. 28, 2024) ....................................23

*Cook v. Wallot*,
    172 So. 3d 788 (Miss. Ct. App. 2013) ................................................19

*Coombs v. Unique Refinishers*, *Inc.*,
    2013 WL 1319773 (N.D. Miss. Mar. 27, 2013) ....................................24

*Crechale v. Carroll Fulmer Logistics Corp.*,
    2020 WL 4927508 (S.D. Miss. Aug. 21, 2020)....................................13

*Do Sung Uhm v. Humana, Inc.*,
    620 F.3d 1134 (9th Cir. 2010) ..........................................................4, 5

*Dow v. Town of D'Lo*,
    152 So. 474 (Miss. 1934).....................................................................7, 9

*E. Me. Med. Ctr. v. Walgreen Co.*,
    331 A.3d 380 (Me. 2025).....................................................................12

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) .............................................................21

*FMC Corp. v. Holliday*,
    498 U.S. 52 (1990)...............................................................................5

*Gallegos v. Mid-S. Mortg. & Inv., Inc.*,
   956 So. 2d 1055 (Miss. Ct. App. 2007) ....................................................21

*Gobeille v. Liberty Mut. Ins. Co.*,
   577 U.S. 312 (2016) .......................................................................5, 6

*Hill v. Moore*,
   290 So. 3d 769 (Miss. Ct. App. 2020) .....................................................14

*Holland v. Murphy Oil USA, Inc.*,
   290 So. 3d 1253 (Miss. 2020) ...............................................................14

*Hopewell Enters., Inc. v. Trustmark Nat'l Bank*,
   680 So. 2d 812 (Miss. 1996) ................................................................13

*Houston Methodist Hosp. v. Humana Ins. Co.*,
   266 F. Supp. 3d 939 (S.D. Tex. 2017) ......................................................4

*Hulsman v. Behavioral Health Sys., Inc.*,
   13 So. 3d 838 (Miss. App. 2009) ............................................................6

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
   44 F.4th 959 (10th Cir. 2022) ................................................................6

*In re EpiPen ERISA Litig.*,
   2020 WL 4501925 (D. Minn. Aug. 5, 2020) ...............................................3

*Ingersoll-Rand Co. v. McLendon*,
   498 U.S. 133 (1990) ...........................................................................6

*Johnson v. Alcorn St. Univ.*,
   929 So. 2d 398 (Miss. Ct. App. 2006) ...............................................16, 17

*Leaf River Forest Prods., Inc. v. Ferguson*,
   662 So. 2d 648 (Miss. 1995), *abrogated on other grounds by Adams v. U.S.
   Homecrafters*, 744 So. 2d 736 (Miss. 1999) .........................................8, 12

*Lewis v. Miss. Farm Bur. Mut. Ins. Co.*,
   2007 WL 2122469 (S.D. Miss. July 20, 2007) ...........................................22

*Lopez v. Bellamare Dev. LLC*,
   293 So. 3d 271 (Miss. Ct. App. 2019) .....................................................15

*Michael v. Boutwell*,
   2015 WL 728516 (N.D. Miss. Feb. 19, 2015) ............................................21

*Miles v. Am. Tel. & Tel. Co.*,
   703 F.2d 193 (5th Cir. 1983) ................................................................24

*Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*,
    100 So. 3d 432 (Miss. 2012) ................................................................................18

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
    2022 WL 18401603 (S.D. Miss. Aug. 29, 2022) ....................................................24

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
    620 F. Supp. 3d 532 (S.D. Miss. 2022) ..........................................................13, 21

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
    No. 21-cv-674 (S.D. Miss. Aug. 15, 2022) ..........................................................24

*Montoya v. FedEx Ground Package Sys., Inc.*,
    614 F.3d 145 (5th Cir. 2010) ..................................................................................3

*Olson v. Gen. Dynamics Corp.*,
    960 F.2d 1418 (9th Cir. 1991) ................................................................................5

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
    868 So. 2d 331 (Miss. 2004) ................................................................................17

*Pharm. Care Mgmt. Ass'n v. Mulready*,
    78 F.4th 1183 (10th Cir. 2023) ....................................................................3, 4, 23

*Prairie Livestock Co. v. Chandler*,
    325 So. 2d 908 (Miss. 1976) ................................................................................17

*Prescott v. Leaf River Forest Prods., Inc.*,
    740 So. 2d 301 (Miss. 1999) ..........................................................................12, 13

*Rainwater v. Lamar Life Ins. Co.*,
    207 F. Supp. 2d 561 (S.D. Miss. 2002) ................................................................10

*Ready v. RWI Transp., LLC*,
    203 So. 3d 590 (Miss. 2016) ................................................................................14

*Rein v. Benchmark Const. Co.*,
    865 So. 2d 1134 (Miss. 2004) ..............................................................................14

*Retail Indus. Leaders Ass'n v. Fielder*,
    475 F.3d 180 (4th Cir. 2007) ..................................................................................6

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
    592 U.S. 80 (2020) ..............................................................................................2, 6

*Sanderson Farms Inc. v. McCullough*,
    212 So. 3d 69 (Miss. 2017) ............................................................................13, 14

*Sholberg v. Truman,*
    852 N.W.2d 89 (Mich. 2014) ..................................................................... 11

*Shushany v. Allwaste, Inc.,*
    992 F.2d 517 (5th Cir. 1993) ..................................................................... 22

*Simpson Cnty. Sch. Dist. v. Wigley,*
    356 So. 3d 147 (Miss. Ct. App. 2022) ...................................................... 16

*State ex rel. Fitch v. Yazaki N. Am., Inc.,*
    294 So. 3d 1178 (Miss. 2020) ............................................................. 20, 21

*State ex rel. Hunter v. Johnson & Johnson,*
    499 P.3d 719 (Okla. 2021) ............................................................... 8, 9, 10

*State ex rel. Stenehjem v. Purdue Pharma L.P.,*
    2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) .................................... 18

*State v. Lead Indus., Ass'n, Inc.,*
    951 A.2d 428 (R.I. 2008) ....................................................................... 9, 11

*Taylor v. S. Farm Bur. Cas. Co.,*
    954 So. 2d 1045 (Miss. Ct. App. 2007) .................................................... 23

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.,*
    984 F.2d 915 (8th Cir. 1993) ....................................................................... 9

*Traube v. Freund,*
    775 N.E.2d 212 (Ill. App. Ct. 2002) ......................................................... 11

*U.S. ex rel. Hebert v. Dizney,*
    295 F. App'x 717 (5th Cir. 2008) .............................................................. 22

*United States ex rel. Doe v. Dow Chem. Co.,*
    343 F.3d 325 (5th Cir. 2003) ..................................................................... 22

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ..................................................................................... 24

*Utz v. Running & Rolling Trucking Inc.,*
    32 So. 3d 450 (Miss. 2010) ........................................................................ 16

*Walton v. City of Verona,*
    82 F.4th 314 (5th Cir. 2023) ...................................................................... 14

*Williams v. Bennett,*
    921 So. 2d 1269 (Miss. 2006) ...................................................................... 9

*Willis v. Rehab Sols., PLLC,*
  82 So. 3d 583 (Miss. 2012) ............................................................................... 19

*Yerby v. United Healthcare Ins. Co.,*
  846 So. 2d 179 (Miss. 2002) ................................................................................ 3

*Young v. Bristol-Meyers Squibb Co.,*
  2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ....................................................... 21

**RULES**

Rule 9(b) ...................................................................................................... 1, 21, 22

Rule 12(b)(6) ....................................................................................................... 3

**STATUTES**

21 U.S.C. §801 ..................................................................................................... 2

21 U.S.C. §829(a) ........................................................................................... 3, 11

29 U.S.C. §1144(a) ............................................................................................. 5

42 U.S.C. §1395w-26(b)(3) .............................................................................. 4

42 U.S.C. §1395w-112(g) ................................................................................. 4

Miss. Code Ann. §11-1-65(a) ......................................................................... 13

Miss. Code Ann. §75-24-1 ................................................................................ 1

Miss. Code Ann. §75-24-5 ................................................................. 19, 22, 23

Miss. Code Ann. §75-24-9 .............................................................................. 20

**OTHER AUTHORITIES**

21 C.F.R. §1306.05(a) ................................................................................... 3, 12

42 C.F.R. §423.153 ............................................................................................. 5

42 C.F.R. §423.440(a) ....................................................................................... 4

42 C.F.R. §423.505(i)(1) .................................................................................... 4

Restatement (Second) of Torts §821C ............................................................ 7

Restatement (Third) of Torts: Liability for Economic Harm §8 .............. 7, 9

# INTRODUCTION[1]

The State of Mississippi seeks to hold Defendants liable for allegedly contributing to third parties' misuse of lawful products—prescription opioids approved by the U.S. Food & Drug Administration ("FDA"). The State in this case is not suing anyone who directly injured it. Nor is it suing anyone who marketed, manufactured, distributed, prescribed, or misused prescription opioids. Instead, the State presses claims against an assortment of unrelated parties, including pharmacy benefit managers ("PBMs"), which administer prescription-drug benefits for health insurance plans, and mail-order pharmacies, which dispense medicines prescribed by doctors. The State asserts claims for public nuisance, negligence, unjust enrichment, and violation of the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. §§75-24-1 *et seq*.

Federal law preempts the State's claims relating to the Medicare Part D and ERISA plans for which PBMs administer benefits. The Court should also dismiss the complaint because the State fails to plausibly allege a single claim for relief. The public-nuisance claim flounders because the State alleges interference with *private* rights, not a public right. The State also fails to allege that Defendants controlled the "instrumentality of the nuisance" or that the State suffered the requisite special injury. The negligence claim fails because the State does not plausibly allege that Defendants owed the State a duty or proximately caused the far-flung harms the State alleges. The unjust enrichment claim is wholly conclusory. And the MCPA claim fails in multiple respects: it does not allege a present or future deceptive act or practice; it does not satisfy Federal Rule of Civil Procedure 9(b); and it does not sufficiently allege a misrepresentation under the Act. If the Court does not dismiss the complaint in its entirety, it should dismiss the corporate-parent

---

[1] Defendants UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., and the Lewin Group, Inc., have also filed a motion to dismiss for lack of personal jurisdiction; this brief is made subject to and without waiving those personal jurisdiction defenses.

entities—UnitedHealth Group Incorporated, Optum, Inc., and Evernorth Health, Inc.—because the State alleges nothing more than standard parent-subsidiary relationships that do not give rise to liability.

## **BACKGROUND**

The crux of the State's case is that Defendants allegedly contributed to third parties' misuse of prescription opioids in Mississippi. ECF No. 1-4 ("Compl.") ¶¶1–35. The State does not allege that Defendants directly interacted with the State in connection with prescription opioids or that they manufactured, marketed, or prescribed opioids. Nor does the State dispute that prescription opioids have long been approved by the FDA as safe and effective for the treatment of pain and are closely regulated by the U.S. Drug Enforcement Administration ("DEA"). Indeed, the State concedes these medications have "legitimate medical purposes." *E.g.*, *id.* ¶¶30, 115, 139. Rather, the complaint broadly alleges that Defendants "facilitat[ed] the oversupply of opioids" in the State by "colluding with . . . opioid manufacturers to increase opioid sales." *Id.* ¶¶17, 20, 125.

The complaint focuses on three types of services Defendants offer: PBM services, mail-order pharmacy services, and research services. *E.g.*, *id.* ¶¶106, 131, 148. Within the pharmaceutical supply chain, PBMs are unique. PBMs never take physical possession or control of prescription medications. They administer the prescription-drug benefit component of health insurance plans for their clients, which are the insurers and other entities that sponsor those plans. *See* ECF No. 31 at 1–2 (citing *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84 (2020)). PBMs also "negotiate with pharmaceutical manufacturers for rebates on prescription drugs, and they develop formularies and utilization management tools for their clients." *Id.* at 2.

The Mail Order Pharmacy Defendants dispense prescription opioids under the Controlled Substances Act ("CSA"), 21 U.S.C. §§801 *et seq.*, which establishes a comprehensive regulatory scheme for the prescribing and dispensing of controlled substances, including prescription opioids,

*e.g.*, Compl. ¶¶132–45. Pharmacists do not decide whether a particular patient should be prescribed an opioid medication; that is the role of a licensed doctor. 21 U.S.C. §829(a). Nor do pharmacists decide the appropriate drug strength, dosage form, or quantity; that, too, is the doctor's role. *See* 21 C.F.R. §1306.05(a).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate where the plaintiff "does not raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.    FEDERAL LAW PREEMPTS THE STATE'S CLAIMS RELATING TO MEDICARE PART D AND ERISA PLANS.

The Medicare Act and ERISA preempt the State's claims relating to Medicare Part D and ERISA plans, which constitute the vast majority of the PBM Defendants' clients. *See In re EpiPen ERISA Litig.*, 2020 WL 4501925, at *4 (D. Minn. Aug. 5, 2020) (Express Scripts, OptumRx, and other PBMs manage benefits for "thousands" of ERISA plans). Covered health plans are governed by uniform federal benefits laws, not state law. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1188–96 (10th Cir. 2023); *Yerby v. United Healthcare Ins. Co.*, 846 So. 2d 179, 187–88 (Miss. 2002). Because the State's claims directly implicate the preemption provisions in Medicare Part D and ERISA, *see* Compl. ¶¶23–27, 32–36, 68, 106–12, they are preempted.

***Medicare Act Preemption.*** The Medicare Act preempts the State's claims because the State seeks to impose liability based on the PBM Defendants' administration of benefits for prescription

opioids prescribed to members of Medicare Part D plans. *See, e.g.*, *Mulready*, 78 F.4th at 1205–09 (Medicare Act partially preempted state PBM law). Medicare Act preemption is "unmistakably broad." *Id.* at 1205. Part D's preemption clause provides that the "standards established under [Part D] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency)." 42 U.S.C. §1395w-26(b)(3); *see also* 42 U.S.C. §1395w-112(g); 42 C.F.R. §423.440(a). The Medicare Act preempts both state statutory claims, *see Houston Methodist Hosp. v. Humana Ins. Co.*, 266 F. Supp. 3d 939, 952 (S.D. Tex. 2017), and common-law claims, *see Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1156 (9th Cir. 2010).

The State attempts to impose liability on the PBM Defendants based on how prescription opioids were selected, priced, and covered—including by Medicare Part D plans. But the PBM Defendants and their Part D clients administer pharmacy benefits according to regulations adopted by the Centers for Medicare and Medicaid Services ("CMS"). *See* 42 C.F.R. §423.505(i)(1) ("Notwithstanding any relationship(s) that the Part D plan sponsor may have with first tier, downstream, and related entities, the Part D sponsor maintains ultimate responsibility for adhering to and otherwise fully complying with all terms and conditions of its contract with CMS."). For example, CMS requires Part D sponsors to provide an "Adequate Formulary" that meets a number of requirements, such as "includ[ing] adequate coverage of the types of drugs most commonly needed by Part D enrollees" and providing specific numbers of Part D drugs within certain categories or classes of covered drugs. *Id.* §§423.100, 423.120(b)(2). And ultimately, Part D sponsors' "design of the plan and its benefits (including any formulary and tiered formulary structure)" must be "approved by CMS." *Id.* §§423.120(b)(2)(iv), 423.272(b)(2).

These regulations plainly contemplate oversight and approval over the design of the very drug formularies for which the State seeks to hold the PBM Defendants liable. *See, e.g.*,

Compl. ¶¶21, 24, 110–16, 172 (alleging PBM Defendants "intentionally designed benefit plans and standard national formularies that would maximize opioid utilization"). The same is true of utilization management. CMS provides specific guidance on "establish[ing] a reasonable and appropriate drug utilization management program" and requires Part D sponsors to "[p]rovide CMS with information regarding the procedures and performance" of that program. 42 C.F.R. §423.153(b), (d). But the State alleges PBM Defendants were paid "to ensure that utilization management tools are not implemented so that access to opioids remains unrestricted." Compl. ¶118; *see also id.* ¶¶20–21, 111–13.

Simply put, the core of the State's liability theory is a disagreement with how formularies are designed and how utilization management controls are implemented with respect to prescription opioids. By second-guessing the content of formularies and related PBM policies adopted under CMS standards and approved by CMS itself, the State's claims run headlong into the Medicare Act's preemption clause because the State seeks to "impose liability for the structure of formularies which CMS requires be developed and reviewed in a specific manner." *Alaska v. Express Scripts, Inc.,* 2024 WL 2321210, at *11 (D. Alaska May 22, 2024) (Medicare Act preempted State of Alaska's opioid-related claims with respect to "Express Scripts' administration of Part D plans"); *see also Do Sung Uhm*, 620 F.3d at 1157 (Medicare Act preempted state-law claims that "would directly undermine CMS's prior determination").

**ERISA Preemption.** ERISA preempts "any and all State laws" that "relate to any employee benefit plan." 29 U.S.C. §1144(a). ERISA's "pre-emption clause is conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). It applies to state statutes and "common law causes of action," *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1420 (9th Cir. 1991), that either have a

"connection with" or make "reference to" an ERISA plan, *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016). The State's claims fall into both categories.

*First*, because the State's claims have a "connection with" ERISA plans, they "relate to" the plans and are thus preempted. *Id.* at 319–20. "[A] state law has an 'impermissible connection' with an ERISA plan" if the law "governs a central matter of plan administration or interferes with nationally uniform plan administration"—for example, if the law seeks to "require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits." *Rutledge*, 592 U.S. at 86–87 (citations omitted). The State's claims have such a "connection" because they allege PBMs should have altered the design of formularies and utilization-management practices for health plans (including ERISA plans) to require, or forbid, the payment of specific benefits for prescription opioids. *E.g.*, Compl. ¶¶20–21, 24–25, 68, 96–97, 116. The State thus attempts to do what courts "readily and routinely" disallow, *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 192 (4th Cir. 2007): "force an ERISA plan to adopt a certain scheme of substantive coverage." *Rutledge*, 592 U.S. at 87 (quotations omitted).

*Second*, ERISA preempts the State's claims because they make "reference to" ERISA plans, such that "the existence of ERISA plans is essential to the [claim's] operation." *Gobeille*, 577 U.S. at 319–20. ERISA plans represent the bulk of the PBM Defendants' clients, and those clients retain decision-making authority regarding benefit design. Compl. ¶120; *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 965–69 (10th Cir. 2022). But the State attacks the PBM Defendants' role in administering those plans, such as by allegedly giving prescription opioids "unrestricted, preferred formulary status" and "not install[ing] reasonable controls in the form of quantity limits, prior authorization requirements, or MME daily limits." Compl. ¶¶154, 174; *see, e.g., id*. ¶¶20–21, 24–25, 68, 96–97, 116. Because

there "is *no* cause of action if there is no [ERISA] plan" for the PBM Defendants to administer, the claims are preempted. *Ingersoll-Rand Co. v. McLendon*, 498 U.S. 133, 140 (1990); *Hulsman v. Behavioral Health Sys., Inc.*, 13 So. 3d 838, 843 (Miss. App. 2009) ("[I]f a party's claim emanates from the administration of an ERISA-regulated benefit plan, then the claim is preempted.").[2]

## II.  THE STATE FAILS TO STATE A CLAIM FOR PUBLIC NUISANCE, NEGLIGENCE, OR UNJUST ENRICHMENT.

### A.  The State has not plausibly alleged a public-nuisance claim.

To plead a viable public-nuisance claim, the State must allege that Defendants unreasonably interfered "with a right common to the general public." *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 860 (Miss. 1988); Restatement (Third) of Torts: Liability for Economic Harm §8 cmt. b (2020) ("A public nuisance arises when a defendant's wrongful act causes harm to a public right."). It must also allege that the defendant controlled the instrumentality of the nuisance at the time of injury. *See Burke v. Shaw*, 59 Miss. 443, 445–47 (1882). Further, to recover the public-nuisance *damages* it seeks, the State "must have sustained harm different in kind, rather than in degree, than that suffered by the public at large." *Comet Delta*, 521 So. 2d at 861 (quoting Restatement (Second) of Torts §821C). The State fails all three requirements. It also fails to show that it is entitled to the punitive damages it seeks.

---

[2] The allegations in this case differ materially from those in *Alaska v. Express Scripts, Inc.*, where a court (wrongly) rejected ERISA preemption. 2024 WL 2321210, at *10. Unlike in *Alaska*, the State here alleges that the PBM Defendants "should have imposed stricter quantity limits, refill limitations, or preauthorization requirements" on prescription opioids, Compl. ¶181—allegations that seek to "dictate a[] particular scheme of coverage," 2024 WL 2321210, at *10.

### 1.     The State has not alleged any interference with a public right.

A "public right" is one "enjoyed by citizens as part of the public"—an indivisible entitlement shared by the community at large. *Dow v. Town of D'Lo*, 152 So. 474, 476 (Miss. 1934). An alleged nuisance need not actually affect "the entire community," but it must "interfere with those who come into contact with it in the exercise of a public right." *Comet Delta*, 521 So. 2d at 860 (quotations omitted). For example, alleging that a defendant was "storing coal in the open . . . produc[ing] windborne . . . black, greasy, airborne coal dust" is sufficient to allege a "significant interference" with the right of the general public to clean air. *Id.* Similarly, "[a] reduction of recreational or aesthetic use or enjoyment of [a] river" due to pollution could constitute "an unreasonable interference with" the public's right to the use and enjoyment of the waterway because the pollution diminishes the rights of every individual it comes into contact with. *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 665 (Miss. 1995) (assuming without deciding that such conduct could "qualify as an unreasonable interference with [a] public right[]"), *abrogated on other grounds by Adams v. U.S. Homecrafters*, 744 So. 2d 736 (Miss. 1999).

Public-nuisance doctrine does not extend to violations of private rights, even when widespread. *See Comet Delta*, 521 So. 2d at 860; *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (applying Mississippi law). Many individual injuries is not equal to violation of a public right. *See Andrews v. Enpro Indus., Inc.*, 2025 WL 837324, at *11 (N.D. Miss. Mar. 17, 2025) (dismissing public-nuisance claim where plaintiffs "d[id] not clearly allege that [they] suffered damages as members of the public exercising a public right," even though they "vaguely allege[d] that they were continuously exposed to TCE as members of the community"); *see also State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 726 (Okla. 2021) ("A public right is more than an aggregate of private rights by a large number of injured people.").

Applying this distinction, many courts have refused to extend public-nuisance liability to lawful products like prescription opioids that do not interfere with the rights of, or injure, every individual they come into contact with. "Products generally are purchased and used by individual consumers, and any harm they cause—even if the use of the product is widespread and the [defendant's] conduct is unreasonable—is not an actionable violation of a public right." *Hunter*, 499 P.3d at 726 (citation omitted); *accord, e.g.*, *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 447–48 (R.I. 2008). Simply put, the "manufacture and distribution of products rarely, if ever, causes a violation of a public right as that term has been understood in the law of public nuisance." *Hunter*, 499 P.3d at 726 (citation omitted). These courts' holdings are consistent with the Third Restatement, which explains that "the common law of public nuisance is an inapt vehicle for addressing" harms related to products. Restatement (Third) of Torts §8 cmt. g.; *see Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006) (following Third Restatement in product liability case).

The opioid-related harms the State alleges amount to, *at most*, widespread interference with *private* rights. *Cf. Hunter*, 499 P.3d at 726. Although the State refers colloquially to an opioid "epidemic," *e.g.*, Compl. ¶221, it does not (and cannot) allege that prescription opioids harm all "who come in contact with [them]," *Comet Delta*, 521 So. 2d at 858, 860. Prescription opioids are medicines approved by the FDA as safe and effective for treating pain when taken as prescribed, *see City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 450 (S.D. W.Va. 2022), and the State concedes, as it must, that these medications have "legitimate medical purposes," Compl. ¶¶30, 115, 139, 142, 155, 232. The State's claim is thus based on the alleged misuse or abuse of prescription opioids by individuals—*not* interference with a public right. *See*

*Dow*, 152 So. at 476; *see also Hunter*, 499 P.3d at 727 (rejecting existence of "a public right to be free from the threat that others may misuse or abuse prescription opioids").

Were this Court to accept the State's sweeping "public right" theory, public-nuisance law "would become a monster that would devour in one gulp the entire law of tort." *Hunter*, 499 P.3d at 726 (quoting *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993)). Under the State's approach, liability would extend to myriad indisputably legal activities. Carmakers could be sued for contributing to a "climate crisis"; gunmakers to a "crime wave"; soda makers to an "obesity epidemic." And liability would not stop with product makers. If a PBM's administration of insurance benefits for FDA-approved medications prescribed by doctors can create public-nuisance liability, then any entity in the stream of commerce can face "unlimited and unprincipled liability." *Id.* at 725; *see also Beretta*, 821 N.E.2d at 1116 (rejecting expansion of public nuisance that "would permit nuisance liability to be imposed on an endless list of manufacturers, distributors, and retailers of manufactured products"). Banks and credit card companies could face liability for issuing checks and credit cards used to pay for cars, firearms, soda, as could any other enterprise that an inventive lawyer can link to a lawful product claimed to contribute to a public nuisance. Simply put, the "lawful products at issue in this case cannot be a public nuisance without straining the law to absurdity." *Camden*, 273 F.3d at 540.

Although a handful of Mississippi trial court decisions have allowed public-nuisance claims to proceed against opioid manufacturers and distributors, those decisions are unpersuasive. *See* Order, *Mississippi v. Cardinal Health, Inc.*, No. 25CI1:18-cv-00692 (Hinds Cnty. Cir. Ct. Apr. 5, 2021) (**Exhibit A**); Order, *Mississippi v. Cardinal Health, Inc.*, No. 25CI1:18-cv-00692 (Hinds Cnty. Cir. Ct. Mar. 4, 2021) (**Exhibit B**); Order, *Mississippi v. Purdue Pharma L.P.*, No. 25CH1:15-cv-01814 (Hinds Cnty. Ch. Ct. Dec. 3, 2020) (**Exhibit C**). *First*, on matters of state law, this Court

is bound by "decisions of the Mississippi Supreme and Appellate Courts"—not trial court decisions. *Rainwater v. Lamar Life Ins. Co.*, 207 F. Supp. 2d 561, 565 (S.D. Miss. 2002). *Second*, those decisions offer only cursory analysis of the State's public-nuisance claims, merely reciting the elements and allegations before concluding the counts were sufficiently pled. *See* Exhibit A at 2–3; Exhibit B at 2–3 (same); Exhibit C at 7–8. That limited analysis is irreconcilable with public-nuisance law as set forth by the Mississippi Supreme Court and the Restatements, which, as explained above, does not extend to the interferences with *individual* rights alleged in this case. *Third*, none of those cases extended liability to PBMs, which are far more removed in the stream of commerce from the third-party individuals allegedly injured in this case.

### 2. The State fails to allege Defendants had control of the instrumentality of the alleged nuisance.

The public-nuisance claim also fails because the State does not allege that Defendants owned or controlled the prescription opioid medications in question when they are alleged to have caused harm. Mississippi law makes clear that a party cannot be held liable for a nuisance unless it controlled the instrumentality of the nuisance at the time of injury. *See Christmas v. Exxon Mobil Corp.*, 138 So. 3d 123, 127 (Miss. 2014) (defendant not liable for alleged nuisance arising from "something over which [it] ha[s] no control"); *Burke*, 59 Miss. at 445–46 (rejecting nuisance claim because seller of product was "in no manner responsible for the disposition made of it after he has parted with it"). That is the law in other states as well. *See, e.g.*, *Sholberg v. Truman*, 852 N.W.2d 89, 93 (Mich. 2014) ("It has been recognized in this state that control and possession are the determinative factors in the imposition of liability."); *Lead Indus.*, 951 A.2d at 449 (similar); *Traube v. Freund*, 775 N.E.2d 212, 216 (Ill. App. Ct. 2002) (similar).

The State does not (and cannot) allege that Defendants had "control" of the instrumentality of the alleged nuisance. PBMs never take possession or control of prescription opioids; they

administer the prescription-drug benefit component of health insurance plans for their clients. *See* ECF No. 31 at 1–2. And while the State alleges the Mail Order Pharmacy Defendants contributed to the alleged nuisance by "failing to maintain effective controls against diversion," including "in their own dispensing [of opioids]," Compl. ¶¶21, 182, the State does not dispute that pharmacists do not decide whether a patient should be prescribed an opioid, 21 U.S.C. §829(a), or the appropriate strength, form, or quantity of that prescription, 21 C.F.R. §1306.05(a). Nor does the State allege that any Defendant had "control" over third parties' use or misuse of prescription opioids, which is the real source of its alleged harms.[3]

### 3. The State has not alleged the requisite special injury to seek damages.

The State is also not entitled to recover the "compensatory and punitive damages" it seeks for its public-nuisance claim. Compl. ¶245; *see id.* ¶¶32, 215, 222, 223, and §VI(C). That is because the State does not allege that it has "sustained a different kind of harm or a greater degree of harm than that sustained by the public," which is essential to recover damages in a public-nuisance suit. *Andrews*, 2025 WL 837324, at *11; *Leaf River*, 662 So. 2d at 664–65.

The only "economic harm" the State alleges is the cost of "[a]ddressing . . . blight, vagrancy, property damage, and property crime" stemming from the "opioid epidemic." Compl. ¶¶197(e), 201. But the State has not alleged harm to *any* proprietary or sovereign interest, nor has it alleged any economic harm different from that suffered by the general taxpaying public. In the absence of such allegations, the State is limited to the traditional remedy of abatement to "suppress [the] public nuisance by injunctive process." *Bosarge v. State ex rel. Price*, 666 So. 2d

---

[3] As discussed in Section II.B.2 below, the State also fails to allege that Defendants proximately caused the alleged harms, providing an independent reason to dismiss the public-nuisance claim. *Comet Delta*, 521 So. 2d at 859 ("One is subject to liability for a . . . nuisance if, but only if, his conduct is a legal cause of" the alleged interference. (citation omitted)).

485, 489 (Miss. 1995); *see also E. Me. Med. Ctr. v. Walgreen Co.*, 331 A.3d 380, 393 (Me. 2025) (dismissing public-nuisance claim by hospitals against opioid distributors because the alleged injuries were "no different in kind from the injury to the public").

The State's request for "punitive damages" similarly fails. Compl. ¶245. "Punitive damages are not recoverable absent an award of actual damages." *Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 312 (Miss. 1999) (quoting *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 820 (Miss. 1996)). And because the State has not alleged any special injury "different in kind . . . than that suffered by the public at large," it is entitled to neither compensatory nor punitive damages for the public nuisance it alleges. *Id.* (dismissing public-nuisance claim based on failure to show special injury and denying claim for punitive damages as a result).

### 4.    The State has not plausibly alleged a claim for punitive damages.

In any event, the State fails to plead a viable claim for punitive damages. "[A] plaintiff seeking punitive damages must adequately plead that the defendant 'acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.'" *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 620 F. Supp. 3d 532, 543 (S.D. Miss. 2022) (quoting Miss. Code Ann. §11-1-65(a)). The State asserts a single, conclusory statement that "Defendants' conduct was willful, wanton, malicious, reckless, oppressive, and/or fraudulent." Compl. ¶244. That lone allegation merely recites the elements of a punitive damages claim and should be dismissed. *See Affordable Care, LLC v. JNM Off. Prop., LLC*, 2020 WL 3453746, at *2 (S.D. Miss. June 24, 2020) (dismissing punitive damages claim that "contain[ed] merely a 'formulaic recitation' of the elements of a punitive-damages claim"); *Crechale v. Carroll Fulmer Logistics Corp.*, 2020 WL 4927508, at *4–5 (S.D. Miss. Aug. 21, 2020) (dismissing punitive damages claim for failure to plead the necessary "extraordinary, egregious facts").

**B.    The State has not plausibly alleged negligence.**

To state a claim for negligence, the State must allege "each of the elements of negligence: duty, breach, causation and injury." *Bolton v. Lee*, 405 So. 3d 1, 9 (Miss. Ct. App. 2023) (quoting *Sanderson Farms Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017)). The State fails to establish these elements as a matter of law.

**1.    The State fails to allege any cognizable duty owed by Defendants.**

"Duty and breach of duty . . . are essential to finding negligence and therefore, must be demonstrated first." *Id.* (quoting *Sanderson Farms*, 212 So. 3d at 76). Whether a duty of care exists is a question of law to be decided by the Court. *Ready v. RWI Transp., LLC*, 203 So. 3d 590, 593 (Miss. 2016). To establish duty, a plaintiff "must show . . . the existence of a duty to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury." *Rein v. Benchmark Constr. Co*., 865 So. 2d 1134, 1143 (Miss. 2004) (quotation omitted). There is "no . . . duty" to protect third parties "absent a special relationship between the actor and the third party that imposes a duty for the actor to control the third party or absent a special relationship between the actor and the injured party that gives the injured party a right to protection." *Holland v. Murphy Oil USA, Inc.*, 290 So. 3d 1253, 1256 (Miss. 2020); *see Walton v. City of Verona*, 82 F.4th 314, 323 (5th Cir. 2023) (same).

The absence of a duty to protect against third parties is fatal to the State's claim. The State seeks to hold Defendants liable for the alleged creation of an "illegal, secondary market" for opioids and the diversion of opioids "by persons with criminal purposes." Compl. ¶190. But the State has not alleged (nor could it allege) the type of "special relation[ship]" that would require Defendants to protect the State against the actions of third parties wrongfully abusing, misusing, or diverting opioids. *See Hill v. Moore*, 290 So. 3d 769, 772–73 (Miss. Ct. App. 2020) ("[A] person who does not have the ability to control another's conduct should not have liability imposed upon

him or her for the tortious act of that other person.") (citation omitted); *Holland*, 290 So. 3d at 1256. PBMs adjudicating claims for insurance coverage of FDA-approved medications prescribed by doctors, and mail-order pharmacies dispensing such prescription medications, do not owe a duty to the State for alleged harms caused by those third-party patients, or by individuals further downstream.

The State also fails to plausibly allege that its alleged harms were reasonably foreseeable to Defendants. It asserts in conclusory fashion that the State's alleged injuries were "foreseeable and, in fact, foreseen by Defendants." Compl. ¶227. But the kinds of injuries it alleges involve children exposed to opioids, loss of companionship, and other injuries far removed from Defendants' alleged conduct. *Id.* ¶217. The complaint contains no allegations that suggest when the PBM Defendants processed claims for insurance coverage of FDA-approved prescription medications prescribed by doctors, when the Mail Order Pharmacy Defendants filled such prescriptions, or when some Defendants provided data, analytics, and research services, that it was foreseeable those acts would cause the nearly limitless downstream harms the State alleges. *See infra* II.B.2; *Beretta*, 821 N.E.2d at 1126 (firearm manufacturers and distributors did not owe duty of care to municipal governments because it was not "foreseeable . . . that the criminal conduct of individuals who illegally take firearms into a particular community w[ould] result in" injuries there). Indeed, it would radically reshape modern pharmaceutical practices to hold that PBMs and mail-order pharmacies owe a duty to every state and local government in which any FDA-approved medication that is covered by insurance processed by a PBM or dispensed by a mail-order pharmacy might be misused by patients or other third parties. Such a reshaping is "better

15

suited for the Legislature to address." *Lopez v. Bellamare Dev. LLC*, 293 So. 3d 271, 278 (Miss. Ct. App. 2019) (quotations omitted).[4]

### 2.    The State fails to plausibly allege that Defendants proximately caused its alleged injuries.

The State also fails to plausibly allege that Defendants caused its alleged injuries. "[T]o incur liability when a party is negligent, that negligence also must be the proximate cause of the injury." *Bolton*, 405 So. 3d at 12 (quoting *Utz v. Running & Rolling Trucking Inc*., 32 So. 3d 450, 466 (Miss. 2010)). "Proximate caus[ation] requires: (1) cause in fact; and (2) foreseeability." *Johnson v. Alcorn St. Univ.*, 929 So. 2d 398, 411 (Miss. Ct. App. 2006) (citation omitted). The State fails both prongs.

To allege cause in fact, the State must allege that Defendants' "act or omission was a substantial factor in bringing about the injury, and *without it the harm would not have occurred*." *Id*. (citation omitted) (emphasis added); *see Bennett v. Highland Park Apartments, LLC*, 170 So. 3d 522, 527 (Miss. Ct. App. 2014), *aff'd*, 170 So. 3d 450 (Miss. 2015) (similar). In other words, the State must allege that Defendants' actions were the "cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury." *Simpson Cnty. Sch. Dist. v. Wigley*, 356 So. 3d 147, 155 (Miss. Ct. App. 2022). But the State alleges it was injured "by a wide array of actors in the opioid supply and payment chain," Compl. ¶17, from "manufacturers who make the drugs" to individuals who "abused, misused, and diverted" opioids "into the illegal, secondary market," where they were "obtained by persons with criminal purposes." *Id*. ¶¶20, 190.

---

[4]    The two trial court decisions finding, with scant analysis, that the State plausibly alleged opioid manufacturers and distributors owed a duty, *see* Exhibit A at 3; Exhibit B at 4, do not apply to Defendants, who do not manufacture or distribute prescription opioids.

Indeed, the State's allegations regarding the PBM Defendants' role in the "opioid supply and payment chain" confirm the lack of causation. As the State alleges, the PBM Defendants "are hired to administer and manage prescription drug benefits." *Id*. ¶106. This involves "creat[ing] lists of drugs [formularies] that are selected to be covered by health plans" and offering "standard formularies and recommendations regarding utilization management tools." *Id*. ¶¶106–112. But the State never alleges that the PBM Defendants *mandated* health plans to adopt a particular formulary or utilization management; it alleges Defendants' role was to help health plans obtain prescriptions for their members at discounted prices. *Id*. ¶54. The State thus fails to show how, but for the PBM Defendants' actions, its injuries would not have occurred.

In addition, the State fails to plausibly allege that its broad injuries were foreseeable consequences of Defendants' conduct. Foreseeability "means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others." *Johnson*, 929 So. 2d at 411 (citation omitted). "[F]oreseeable liability does not include remote possibilities." *Prairie Livestock Co. v. Chandler*, 325 So. 2d 908, 910 (Miss. 1976) (citation omitted). Prescription opioids are medications approved by the FDA as safe and effective, *see City of Huntington*, 609 F. Supp. 3d at 450, and even the State admits they have a "legitimate medical purposes," Compl. ¶¶30, 115, 139, 142, 155, 232. The State does not and cannot plausibly allege that Defendants should have reasonably foreseen these FDA-approved medications causing such downstream effects as children being "exposed to medications prescribed to family members," "infants [being] born addicted to opioids," individuals "caring for loved ones addicted to or injured by opioids," increased healthcare costs for residents, employers' lost "value of productive and healthy employees," "an abundance of drugs available for criminal use," and the creation of a "secondary criminal market." Compl. ¶217. Defendants are "not liable" for such "remote or collateral" harms.

*Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 867 (S.D. Miss. 2012), *aff'd*, 718 F.3d 460 (5th Cir. 2013); *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 342 (Miss. 2004) (proximate cause lacking where "alleged injury is too remote"). Considering the narrow scope of activities Defendants allegedly engaged in, the State did not and could not plausibly allege that Defendants could have foreseen the existence of injuries this attenuated.

Other courts considering similar claims against opioid manufacturers and distributors have correctly dismissed those suits based on "lengthy, multifaceted chains of causation." *City of New Haven v. Purdue Pharma, L.P.*, 2019 WL 423990, at *3 (Conn. Super. Ct. Jan. 8, 2019) (unpublished opinion) (dismissing suit for lack of causation between manufacturing of opioids and deterioration of a city's quality of life); *see, e.g.*, *Huntington*, 609 F. Supp. 3d at 480 ("Distributors have no control over the medical judgment of doctors . . . and are not tasked with deciding whether the patient ought to get pain medication."); *State ex rel. Stenehjem v. Purdue Pharma L.P.*, 2019 WL 2245743, at *13 (N.D. Dist. Ct. May 10, 2019) (dismissing nuisance claim against opioid manufacturer because it could not control "how doctors prescribe its products and it certainly [could not] control how individual patients use and respond to its products").

Like the defendants in those cases, Defendants do not control how doctors prescribe opioids or how patients take them—let alone what bad actors do with them. In fact, as companies "hired to administer and manage prescription drug benefits," Compl. ¶106, Defendants are even further removed from the State's alleged harms. *Cf.* Exhibit B at 6–7 (denying motion to dismiss negligence claim against opioid distributor where complaint alleged "multiple forms of injury and damage *directly* related to the Distributors' actions within the State" (emphasis added)).

### C.    The State has not plausibly alleged unjust enrichment.

The State also fails to plausibly allege unjust enrichment. "Unjust enrichment only applies to situations where there is no legal contract and 'the person sought to be charged is in possession

of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 442 (Miss. 2012) (citation omitted). The complaint must allege, in more than "conclusory fashion," that the "defendant has been unjustly enriched at the expense of the plaintiff." *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 673 (S.D. Miss. 2007) (citation omitted).

The State's sole allegation in support of its unjust enrichment claim recites a single legal conclusion: "It would be inequitable and not in good conscience for Defendants to retain any ill-gotten gains earned as a result of the conduct alleged herein." Compl. ¶258. But "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Cook v. Wallot*, 172 So. 3d 788, 801 (Miss. Ct. App. 2013) (citation omitted). The State fails to allege with any specificity what the purported "ill-gotten gains" are, how they connect to Defendants' alleged misconduct, or how the State could be entitled to "payments made by . . . other payors." Compl. ¶258. Nor has the State alleged any Defendant "mistakenly paid another." *Willis v. Rehab Sols., PLLC*, 82 So. 3d 583, 588 (Miss. 2012). The unjust enrichment claim should be dismissed. *See Cole*, 554 F. Supp. 2d at 673 (dismissing unjust enrichment claim where plaintiffs failed to allege in more than "conclusory fashion" that "defendants were unjustly enriched by price gouging on the plaintiffs' gasoline purchases").[5]

---

[5] The trial court decision allowing the State's unjust enrichment claim against opioid distributors is unpersuasive on this issue, as well. *See* Exhibit B at 8–9. Among other reasons, it contains no analysis and merely concludes, after reciting the elements and allegations, that "the Court finds that Count IV [for unjust enrichment] is sufficiently pled." *Id.*

III.    THE MISSISSIPPI CONSUMER PROTECTION ACT CLAIM FAILS.

A.    The State has not alleged a present or future unfair trade practice.

The MCPA prohibits "unfair or deceptive trade practices," and contains a list of thirteen "practices or acts [that] are [] prohibited." Miss. Code Ann. §75-24-5(1)–(2). The only act the State invokes here is "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." *Id.* at §75-24-5(2)(e); Compl. ¶249. The State alleges Defendants violated that provision by "[m]isrepresenting, failing to state, concealing, suppressing and/or omitting facts regarding the efficacy and usefulness of the opioids offered by the Defendants to consumers and failing to provide effective controls and procedures to guard against diversion . . . ." *Id*. But the State does not allege facts to support the "danger of a *present or future* unfair trade practice," which is required to bring a claim. *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1187 (Miss. 2020) (emphasis added).

The "purpose of the [MCPA] is not to punish past violations. Rather, the purpose of the MCPA is to restrain or enjoin unfair methods of competition through *injunctive* relief." *Id.* at 1184 (citations omitted). "Section 75-24-5(1) makes clear that [an] action may be brought . . . only under the provision of Section 75-24-9," which, in turn, authorizes the State to bring suit only "to restrain by temporary or permanent injunction the use of such [unfair or deceptive] method, act, or practice." *Id.* (quoting Miss. Code Ann. §75-24-9).[6] Accordingly, there must be "some cognizable danger of recurrent violation, something more than the mere possibility which serves

---

[6] That is true even though the MCPA "also allows for the recovery of civil penalties for willful violations of Section 75-24-5." *Yazaki*, 294 So. 3d at 1184. "[M]onetary penalties may only be recovered in an action brought under Section 75-24-9," so, "[i]f there is no action for injunctive relief under 75-24-9, there is no action to recover civil penalties . . . ." *Id.* (cleaned up).

to keep the case alive." *Id.* If the complaint fails to allege a "reasonable danger" of future conduct, the State may not use the Act to "redress completed wrongs." *Id.* at 1187.

For instance, in *Yazaki*, the Mississippi Supreme Court dismissed an MCPA claim by the State against vehicle manufacturers for an alleged "price-fixing conspiracy" because the complaint's allegations showed the "conspiracy ended in 2010" and the State could not "pursue an MCPA injunction based on past conduct." *Id.* at 1184–85. Even though the State alleged the conspiracy "continued through the filing of [the] Complaint" in 2015, "[t]he State's complaint provided no factual basis for the alleged illegal activity continuing past 2010." *Id.* at 1185, 1187. Based on those allegations, the court concluded the State "attempted to use the MCPA impermissibly to redress completed wrongs" and dismissed the claim. *Id.* at 1187.

The same is true here. Other than a throw-away, conclusory allegation that Defendants "continu[e] to engage" in unfair trade practices, Compl. ¶249, the complaint concerns allegations of *past* conduct over the last "two decades," *e.g.*, *id.* ¶¶17, 23, 152. It alleges, in the past tense, that Defendants "engaged in [] conduct" starting in "the late 1990s" that contributed to a public-nuisance. *Id.* ¶¶4, 162. The only allegations concerning the "present or future" are alleged *harms* and "continuing . . . *effect*[s]" of past conduct. *E.g.*, *id.* ¶184. Those are insufficient to state a claim for injunctive relief under the MCPA. *Yazaki*, 294 So. 3d at 1178, 1185–87.

## B.    The State fails to plead fraud with particularity.

The State's MCPA claim also fails because it does not plead the purported fraud with particularity. Federal Rule of Civil Procedure 9(b) applies to any claim sounding in fraud, not just "claims of fraud." *Michael v. Boutwell*, 2015 WL 728516, at *5 (N.D. Miss. Feb. 19, 2015). Thus, although this Court has previously recognized that "Mississippi does not *require* a finding of fraud for an act to be deemed unfair or deceptive" under the MCPA, *Eli Lilly*, 620 F. Supp. 3d at 542 (emphasis added), where an MCPA claim is premised on alleged misrepresentations, Rule 9(b)

applies. *See Young v. Bristol-Meyers Squibb Co.*, 2017 WL 706320, at *15 (N.D. Miss. Feb. 22, 2017) (applying Rule 9(b) to MCPA claims); *Gallegos v. Mid-S. Mortg. & Inv., Inc.*, 956 So. 2d 1055, 1059 (Miss. Ct. App. 2007) ("The elements of intentional misrepresentation are identical to the elements of fraud.").

Here, the State explicitly grounds its MCPA claim in alleged "misrepresentations." Compl. ¶248 (alleging Defendants violated MCPA by "[m]isrepresenting, failing to state, concealing, suppressing, and/or omitting facts"). That means the State must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citation omitted). In other words, the State must allege the "who, what, when, where, and how" of the alleged misrepresentation. *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003) (citation omitted).

The State's allegations do not come close. The State fails to allege any specific misrepresentations to support its averments that Defendants are "engaging, and continuing to engage, in misrepresentations that are immoral, unethical, oppressive, unscrupulous, or substantially injurious." Compl. ¶249. It does not identify a speaker, state when or where any false or misleading statements were made, or how or why the statements were false. *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 523–24 (5th Cir. 1993) (affirming dismissal of fraud claim where "complaint provide[d] only conclusory allegations"); *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, 2012 WL 642304, at *2 (S.D. Miss. Feb. 27, 2012) (dismissing fraud claim where plaintiff failed to identify speaker and when or where misrepresentations were made). The State also improperly alleges misrepresentations by all Defendants as a group, failing to allege anything about each Defendant's statements or conduct. Those kinds of general allegations

"against numerous defendants without identifying specific actions of specific individuals at specific times" are insufficient under Rule 9(b). *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008); *see also Lewis v. Miss. Farm Bur. Mut. Ins. Co.*, 2007 WL 2122469, at *4 (S.D. Miss. July 20, 2007) (dismissing claims under Rule 9(b) where complaint "generically lumped the Defendants together without identifying who allegedly said what").

### C.   The State has not sufficiently alleged a violation of the MCPA.

The State's MCPA claim should also be dismissed because the complaint does not sufficiently allege a violation of the Act. The State alleges that Defendants violated Section 75-24-5(2)(e) by "[m]isrepresenting, failing to state, concealing, suppressing and/or omitting facts regarding the efficacy and usefulness of the opioids offered by the Defendants to consumers and failing to provide effective controls and procedures to guard against diversion . . . ." Compl. ¶249. But allegedly "failing to provide effective controls" Compl. ¶249, is not a "representation" about a good or service. *See Burley v. Homeowners Warranty Corp.*, 773 F. Supp. 844, 863 (S.D. Miss. 1990) (denying leave to add MCPA claim absent deception in the offering or selling of "goods or services"). Moreover, the State's allegations that Defendants "misrepresented" or "omitt[ed] facts" regarding the "efficacy and usefulness" of opioids, Compl. ¶249, are impermissibly conclusory. The State never identifies an instance in which Defendants "misrepresented" or "omitted" such facts, nor could it. *See Mulready*, 78 F.4th at 1188 (PBMs "contract with manufacturers to negotiate rebates on drugs, contract with health plans to manage the plans' prescription-drug benefits, and contract with pharmacies to design pharmacy networks").

Nor is it enough to allege that Defendants "*knew* . . . about the ongoing opioid crisis and the devastating consequences of oversupply and diversion . . . ." Compl. ¶153 (emphasis added). Allegedly knowing something is different than making a "representation" about it. *See* Miss. Code Ann. §75-24-5(2)(e). The State does not identify any obligation—in the MCPA or otherwise—that

23

required Defendants to disclose this alleged knowledge. *See Taylor v. S. Farm Bur. Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007). The State's attempt to fit a square peg into a round hole is not enough to survive dismissal. *See Cook v. Allstate Veh. & Prop. Ins. Co.*, 2024 WL 4594233, at *3 (N.D. Miss. Oct. 28, 2024) (dismissing MCPA claim where plaintiff failed to allege prohibited act); *Berkley v. Midfirst Bank*, 2016 WL 2907705, at *2 (N.D. Miss. May 18, 2016) (similar).[7]

## IV.    THE COURT SHOULD DISMISS THE CORPORATE PARENT ENTITIES.

For three Defendants—UnitedHealth Group Incorporated, Optum, Inc., and Evernorth Health, Inc.—all the State alleges is that they are the corporate parents of other Defendants, Compl. ¶¶38–45, 70–75, and that, "[a]s a result of numerous interlocking directorships and shared executives," these entities "control" the subsidiaries' "operations, management and business decisions . . . ." *Id.* ¶¶65, 93. But "[i]t is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). Only under narrow exceptions like an "alter ego" theory are subsidiaries' actions imputed to their parent companies, and that requires a showing of, among other things, "*actual* control," such that the subsidiary "is merely a conduit through which the parent conducts its business." *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983) (emphasis added); *see Coombs v. Unique Refinishers*,

---

[7] The trial court decisions allowing the State's MCPA claims to proceed against opioid manufacturers and distributors are unpersuasive. Two of the decisions contain little analysis before concluding the MCPA claim was "sufficiently pled." Exhibit A at 4–5; Exhibit B at 8. And all three decisions involved different allegations of "marketing and misrepresenting to the medical community" the risk of opioids through "sales," "direct-to-consumer marketing," and "unbranded marketing." Exhibit C at 5; *see* Exhibit B at 7–8 (similar).

*Inc.*, 2013 WL 1319773, at \*3 (N.D. Miss. Mar. 27, 2013) (complaint must allege "control by the parent to such a degree that the subsidiary has become a mere alter ego or instrumentality").

The State's conclusory allegations that these entities had some control over other Defendants' policies and "shared executives" (*e.g.*, Compl. ¶¶65, 93) are insufficient to assert liability. *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at \*4–5 (S.D. Miss. Aug. 29, 2022) (explaining "the Court finds it inappropriate to pierce the corporate veil" when the State at most alleges certain defendants "share corporate officers, company policies, and stock ownership"); Order at 14–16, ECF No. 112, *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-674 (S.D. Miss. Aug. 15, 2022) (dismissing UnitedHealth Group because complaint contained only conclusory allegations "that the parent companies exercise substantial control" (citation omitted)). Because the State has alleged nothing more than standard parent-subsidiary relationships, the Court should dismiss these corporate-parent entities.

## CONCLUSION

For all these reasons, the Court should dismiss the State's complaint with prejudice.

Respectfully submitted: July 14, 2025.

*/s/ Jim Shelson*
Jim Shelson (MS Bar No. 9693)
CARROLL WARREN & PARKER
P.O. Box 1005
Jackson, MS 39215-1005
(601) 592-1010
jshelson@cwplaw.com

*/s/ Jeffrey R. Blackwood*
Jeffrey R. Blackwood (MS Bar No. 10613)
Jonathan M. Barnes (MS Bar No. 105659)
BRADLEY ARANT BOULT
CUMMINGS LLP
One Jackson Place
188 E Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000
jblackwood@bradley.com
jbarnes@bradley.com

Michael Lyle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I St., N.W., Suite 900
Washington, D.C. 20005
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Counsel for Express Scripts, Inc., Express Scripts Pharmacy, Inc., ESI Mail Pharmacy Service, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Express Scripts Specialty Distribution Services, Inc., and Medco Health Solutions, Inc.*

Brian D. Boone (*pro hac vice*)
Kyle R. Hair (*pro hac vice*)
ALSTON & BIRD LLP
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
(704) 444-1000
brian.boone@alston.com
kyle.hair@alston.com

D. Andrew Hatchett (*pro hac vice*)
Grace Assaye (*pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000
andrew.hatchett@alston.com
grace.assaye@alston.com

*Counsel for Optum, Inc., OptumRx, Inc., OptumInsight Life Sciences, Inc., OptumInsight, Inc., UnitedHealth Group Incorporated, The Lewin Group, Inc.*