**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| State of Mississippi, | |
| *Plaintiff,* | |
| v. | Case No. 3:24-cv-718-KHJ-MTP |
| Optum, Inc., *et al*. | |
| *Defendants*. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ........................................................................................................ 3

ARGUMENT.................................................................................................................... 3

I.    FEDERAL LAW PREEMPTS THE STATE'S CLAIMS RELATING TO MEDICARE
      PART D AND ERISA PLANS. .................................................................................. 3

II.   THE STATE FAILS TO STATE A CLAIM FOR PUBLIC NUISANCE, NEGLIGENCE,
      OR UNJUST ENRICHMENT........................................................................................ 8

      A.    The State has not plausibly alleged a public-nuisance claim........................................... 8

            1.    The State has not alleged any interference with a public right. .............................. 8

            2.    The State fails to allege Defendants had control of the instrumentality of the
                  alleged nuisance. .................................................................................... 11

            3.    The State has not alleged the requisite special injury to seek damages. ................ 13

      B.    The State has not plausibly alleged negligence. ............................................................. 13

            1.    The State fails to allege any cognizable duty owed by Defendants. ....................... 14

            2.    The State fails to plausibly allege that Defendants proximately caused its alleged
                  injuries........................................................................................................ 16

      C.    The State has not plausibly alleged unjust enrichment................................................... 18

      D.    The State has not plausibly alleged a claim for punitive damages. ............................... 20

III.  THE MISSISSIPPI CONSUMER PROTECTION ACT CLAIM FAILS. ........................... 21

      A.    The State has not alleged a present or future unfair trade practice............................... 21

      B.    The State fails to plead fraud with particularity............................................................. 23

IV.   THE COURT SHOULD DISMISS THE CORPORATE PARENT ENTITIES. ................... 24

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. U.S. Homecrafters*,
744 So. 2d 736 (Miss. 1999)................................................................................... 9

*Affordable Care, LLC v. JNM Off. Prop., LLC*,
2020 WL 3453746 (S.D. Miss. June 24, 2020)..................................................... 20

*Alaska v. Express Scripts, Inc.*,
2024 WL 2321210 (D. Alaska May 22, 2024) ......................................................... 6

*Andrews v. Enpro Indus., Inc.*,
2025 WL 837324 (N.D. Miss. Mar. 17, 2025)................................................... 9, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................. 3

*BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*,
2012 WL 642304 (S.D. Miss. Feb. 27, 2012)........................................................ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................. 3

*Bennett v. Highland Park Apartments, LLC*,
170 So. 3d 522 (Miss. Ct. App. 2014) .................................................................. 16

*Berry v. Armstrong Rubber Co.*,
989 F.2d 822 (5th Cir. 1993).................................................................................... 9

*Bolton v. Lee*,
405 So. 3d 1 (Miss. Ct. App. 2023) ......................................................... 13, 14, 16

*Bosarge v. State ex rel. Price*,
666 So. 2d 485 (Miss. 1995)................................................................................... 13

*Broussard v. Exxon Mobil Corp.*,
2025 WL 754536 (5th Cir. Mar. 10, 2025) ............................................................. 6

*Burke v. Shaw*,
59 Miss. 443 (1882).............................................................................................. 8, 12

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
273 F.3d 536 (3d Cir. 2001) ............................................................................... 9, 11

*Christmas v. Exxon Mobil Corp.*,
   138 So. 3d 123 (Miss. 2014)................................................................................. 12

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004)...................................................................... 9, 10, 15

*City of Huntington v. AmerisourceBergen Drug Corp.*,
   609 F. Supp. 3d 408 (S.D. W.Va. 2022) ........................................... 10, 17, 18

*City of New Haven v. Purdue Pharma, L.P.*,
   2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019) .................................... 18

*Cole v. Chevron USA, Inc.*,
   554 F. Supp. 2d 655 (S.D. Miss. 2007) ...................................................... 19

*Comer v. Murphy Oil USA, Inc.*,
   839 F. Supp. 2d 849 (S.D. Miss. 2012)...................................................... 18

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*,
   521 So. 2d 857 (Miss. 1988)......................................................... 8, 9, 10, 13

*Coombs v. Unique Refinishers*, *Inc.*,
   |2013 WL 1319773 (N.D. Miss. Mar. 27, 2013) ........................................ 24

*Crechale v. Carroll Fulmer Logistics Corp.*,
   2020 WL 4927508 (S.D. Miss. Aug. 21, 2020) .......................................... 20

*Do Sung Uhm v. Humana*, *Inc.*,
   620 F.3d 1134 (9th Cir. 2010) ................................................................ 4, 6

*Dow v. Town of D'Lo*, 1
   52 So. 474 (Miss. 1934)........................................................................... 8, 10

*E. Me. Med. Ctr. v. Walgreen Co.*,
   331 A.3d 380 (Me. 2025).............................................................................. 13

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
   565 F.3d 200 (5th Cir. 2009).......................................................................... 23

*Gobeille v. Liberty Mut. Ins. Co.*,
   577 U.S. 312 (2016)..................................................................................... 6, 7

*Hall v. NewMarket Corp.*,
   747 F. Supp. 2d 711 (S.D. Miss. 2010) ......................................................... 6

*Hill v. Moore*,
   290 So. 3d 769 (Miss. Ct. App. 2020) .......................................................... 15

*Holland v. Murphy Oil USA, Inc.*,
290 So. 3d 1253 (Miss. 2020) ................................................................................. 14, 15

*Hous. Methodist Hosp. v. Humana Ins. Co.*,
266 F. Supp. 3d 939 (S.D. Tex. 2017) ........................................................................... 4

*Hulsman v. Behav. Health Sys., Inc.*,
13 So. 3d 838 (Miss. App. 2009) .................................................................................. 7

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
44 F.4th 959 (10th Cir. 2022) ...................................................................................... 7

*In re EpiPen ERISA Litig.*,
2020 WL 4501925 (D. Minn. Aug. 5, 2020) ................................................................. 3

*Ingersoll-Rand Co. v. McClendon*,
498 U.S. 133 (1990) ..................................................................................................... 7

*Johnson v. Alcorn St. Univ.*,
929 So. 2d 398 (Miss. Ct. App. 2006) ................................................................... 16, 17

*Leaf River Forest Prods., Inc. v. Ferguson*,
662 So. 2d 648 (Miss. 1995) ......................................................................................... 9

*Lee v. E.I. DuPont de Nemours & Co.*,
894 F.2d 755 (5th Cir. 1990) ........................................................................................ 6

*Lewis v. Miss. Farm Bur. Mut. Ins. Co.*,
2007 WL 2122469 (S.D. Miss. July 20, 2007) ........................................................... 24

*Lopez v. Bellamare Dev. LLC*,
293 So. 3d 271 (Miss. Ct. App. 2019) ........................................................................ 16

*Michael v. Boutwell*,
2015 WL 728516 (N.D. Miss. Feb. 19, 2015) ............................................................ 23

*Miles v. Am. Tel. & Tel. Co.*,
703 F.2d 193 (5th Cir. 1983) ...................................................................................... 24

*Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*,
100 So. 3d 432 (Miss. 2012) ....................................................................................... 19

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
2022 WL 18401603 (S.D. Miss. Aug. 29, 2022) ........................................................ 25

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
620 F. Supp. 3d 532 (S.D. Miss. 2022) ................................................................. 20, 23

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
　No. 21-cv-674 (S.D. Miss. Aug. 15, 2022) ................................................................. 25

*Montoya v. FedEx Ground Package Sys., Inc.*,
　614 F.3d 145 (5th Cir. 2010) ..................................................................................... 3

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
　868 So. 2d 331 (Miss. 2004) ............................................................................. 18, 19

*Pharm. Care Mgmt. Ass'n v. Mulready*,
　78 F.4th 1183 (10th Cir. 2023) .................................................................................. 4

*Powell v. Campbell*,
　912 So.2d 978 (Miss. 2005) ..................................................................................... 19

*Prairie Livestock Co. v. Chandler*,
　325 So. 2d 908 (Miss. 1976) .................................................................................... 17

*Prescott v. Leaf River Forest Prods., Inc.*,
　740 So. 2d 301 (Miss. 1999) .................................................................................... 20

*Rainwater v. Lamar Life Ins. Co.*,
　207 F. Supp. 2d 561 (S.D. Miss. 2002) ................................................................... 11

*Ready v. RWI Transp., LLC*,
　203 So. 3d 590 (Miss. 2016) .................................................................................... 14

*Rein v. Benchmark Constr. Co.*,
　865 So. 2d 1134 (Miss. 2004) .................................................................................. 14

*Retail Indus. Leaders Ass'n v. Fielder*,
　475 F.3d 180 (4th Cir. 2007) ..................................................................................... 7

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
　592 U.S. 80 (2020) ...................................................................................... 2, 3, 6, 7

*Sanderson Farms Inc. v. McCullough*,
　212 So. 3d 69 (Miss. 2017) ...................................................................................... 14

*Sholberg v. Truman*,
　852 N.W.2d 89 (Mich. 2014) .................................................................................... 12

*Simpson Cnty. Sch. Dist. v. Wigley*,
　356 So. 3d 147 (Miss. Ct. App. 2022) ..................................................................... 16

*State ex rel. Fitch v. Yazaki N. Am., Inc.*,
　294 So. 3d 1178 (Miss. 2020) ............................................................................. 21, 22

v

*State ex rel. Hunter v. Johnson & Johnson*,
    499 P.3d 719 (Okla. 2021) ......................................................................... 9, 10

*State ex rel. Stenehjem v. Purdue Pharma L.P.*,
    2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) ................................................... 18

*State v. Lead Indus. Ass'n, Inc.*,
    951 A.2d 428 (R.I. 2008) ........................................................................... 9, 12

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
    984 F.2d 915 (8th Cir. 1993) ............................................................................ 10

*Town of West Hartford v. Operation Rescue*,
    915 F.2d 92 (2d Cir. 1990) .............................................................................. 13

*Traube v. Freund*,
    775 N.E.2d 212 (Ill. App. Ct. 2002) ................................................................... 12

*U.S. ex rel. Hebert v. Dizney*,
    295 F. App'x 717 (5th Cir. 2008) ...................................................................... 24

*United States ex rel. Doe v. Dow Chem. Co.*,
    343 F.3d 325 (5th Cir. 2003) ............................................................................ 23

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................................ 24

*Utz v. Running & Rolling Trucking Inc.*,
    32 So. 3d 450 (Miss. 2010) .............................................................................. 16

*Walton v. City of Verona*,
    82 F.4th 314 (5th Cir. 2023) ............................................................................ 14

*Welborn v. Bank of N.Y. Mellon Corp.*,
    557 F. App'x 383 (5th Cir. 2014) ...................................................................... 13

*Williams v. Bennett*,
    921 So. 2d 1269 (Miss. 2006) ........................................................................... 10

*Yerby v. United Healthcare Ins. Co.*,
    846 So. 2d 179 (Miss. 2002) .............................................................................. 4

*Young v. Bristol-Meyers Squibb Co.*,
    2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ........................................................ 23

## **Statutes**

21 U.S.C. §801 ................................................................................................ 2

21 U.S.C. §829 ............................................................................................................. 2

29 U.S.C. §1144 ........................................................................................................ 7, 26

42 U.S.C. §1395w-112 ................................................................................................. 5

42 U.S.C. §1395w-26 ................................................................................................... 5

Miss. Code Ann. §75-24-1 ........................................................................................... 1

Miss. Code Ann. §75-24-5 ..................................................................................... 27, 28

Miss. Code Ann. §75-24-9 ......................................................................................... 28

**Other Authorities**

Restatement (Second) of Torts §821C ........................................................................ 10

Restatement (Third) of Torts: Liability for Economic Harm §8 ............................. 10, 13

**Regulations**

21 C.F.R. §1306.05 ...................................................................................................... 3

42 C.F.R. §423.100 ...................................................................................................... 6

42 C.F.R. §423.120 ...................................................................................................... 6

42 C.F.R. §423.153 ...................................................................................................... 6

42 C.F.R. §423.272 ...................................................................................................... 6

42 C.F.R. §423.440 ...................................................................................................... 5

42 C.F.R. §423.505 ...................................................................................................... 5

**INTRODUCTION**[1]

The State of Mississippi seeks to hold Defendants liable for allegedly contributing to the misuse by third parties of lawful products—prescription opioids approved by the U.S. Food & Drug Administration ("FDA"). The State does not allege that Defendants injured it directly. Nor are Defendants responsible for manufacturing, marketing, distributing, prescribing, or misusing the prescription opioids in question. Instead, under the guise of claims for public nuisance, negligence, unjust enrichment, and violation of the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. §§75-24-1 *et seq*., the State alleges that Defendants—including pharmacy benefit managers ("PBMs"), which administer prescription-drug benefits for health insurance plans, and mail-order pharmacies, which dispense medicines prescribed by doctors— contributed to opioid misuse. The claims fail.

Inasmuch as the State has asserted claims relating to the Medicare Part D and ERISA plans for which the PBMs administer benefits, those claims are preempted by federal law. All of the State's claims also fail because the State fails to plausibly allege a single claim for relief. Its public-nuisance claim flounders because the State alleges interference with *private* rights, not a public right; the State also fails to allege in nonconclusory fashion that Defendants controlled the "instrumentality of the nuisance" or that the State suffered the requisite special injury. Its negligence claim fails because the State does not plausibly allege that Defendants owed a duty to protect the State against the actions of third parties or proximately caused the far-flung, downstream harms the State alleges. Its unjust-enrichment claim fails because the State does not

---

[1] Defendants UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, OptumHealth Networks, Inc., OptumRx Discount Card Services, LLC, and Optum Perks, LLC have also filed a motion to dismiss for lack of personal jurisdiction; this brief is made subject to and without waiving those personal jurisdiction defenses.

plausibly allege that Defendants unjustly retained money that belongs to the State. And its MCPA claim fails because the State does not allege a present or future deceptive act or practice and does not satisfy Rule 9(b). The amended complaint also fails to allege, in nonconclusory fashion, a claim for punitive damages. And aside from all these general defects, the claims against the corporate-parent entities—UnitedHealth Group Incorporated, Optum, Inc., and Evernorth Health, Inc.—must be dismissed because the State alleges no more than the type of standard parent–subsidiary relationships that do not give rise to liability.

### **BACKGROUND**

The amended complaint focuses on two types of entities: PBMs and mail-order pharmacies. *E.g.*, ECF No. 46 ("Am. Compl.") ¶¶20–24. Within the pharmaceutical supply chain, PBMs are unique. PBMs never take physical possession or control of prescription medications. They administer the prescription-drug benefit component of health insurance plans for their clients, which are the insurers and other entities that sponsor those plans. *See* ECF No. 31 at 1–2 (citing *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84 (2020)). PBMs also "negotiate with pharmaceutical manufacturers for rebates on prescription drugs, and they develop formularies and utilization management tools for their clients." *Id.* at 2.

Mail-order pharmacies dispense prescription opioids under the Controlled Substances Act ("CSA"), 21 U.S.C. §§801 *et seq*., which establishes a comprehensive regulatory scheme for the prescribing and dispensing of controlled substances, including prescription opioids. Pharmacists do not decide whether a particular patient should be prescribed an opioid medication; that is the role of a licensed doctor. 21 U.S.C. §829(a). Nor do pharmacists decide the appropriate drug strength, dosage form, or quantity; that, too, is the doctor's role. *See* 21 C.F.R. §1306.05(a).

The State commenced this action in Hinds County Chancery Court in August 2024. ECF No. 1-4. After certain Defendants removed the case and this Court denied the State's motion

to remand, ECF Nos. 1, 31, Defendants moved to dismiss the complaint for failure to state a claim, ECF Nos. 38, 39. The State failed to respond to the motion to dismiss within the time period allowed under local rules, ECF No. 45, but thereafter filed an amended complaint, mooting Defendants' motion to dismiss, *see generally* Am. Compl. The crux of the amended complaint remains that Defendants "facilitat[ed] the oversupply of opioids" in the State by "colluding with . . . opioid manufacturers to increase opioid sales." *Id*. ¶¶4, 8.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate where the plaintiff "does not raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc*., 614 F.3d 145, 148 (5th Cir. 2010) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

I.  **FEDERAL LAW PREEMPTS THE STATE'S CLAIMS RELATING TO MEDICARE PART D AND ERISA PLANS.**

All the State's claims against the PBM Defendants relate to actions those defendants allegedly took, or failed to take, in connection with their administration of prescription drug benefits on behalf of their health plan clients. *E.g.*, Am. Compl. ¶¶ 407–21, 469–70, 502, 525–32. Most of those clients are health plans organized under Medicare Part D or ERISA. *See Rutledge*, 592 U.S. at 89 n.1 ("PBMs contract with a variety of healthcare plans and programs . . . including Medicaid, Medicare, military, and market place plans."); *In re EpiPen ERISA Litig.*, 2020 WL 4501925, at *4 (D. Minn. Aug. 5, 2020) (Express Scripts, OptumRx, and other PBMs manage benefits for "thousands" of ERISA plans). Those health plans are governed by uniform federal

3

benefits laws, not state law. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1188–96 (10th Cir. 2023); *Yerby v. United Healthcare Ins. Co.*, 846 So. 2d 179, 187–88 (Miss. 2002). Because the State's claims directly implicate the preemption provisions in Medicare Part D and ERISA, *see, e.g.*, Am. Compl. ¶¶155, 196, 362, 408–12, they are preempted.

*Medicare Act Preemption.* The Medicare Act preempts the State's claims inasmuch as the State seeks to impose liability based on the PBM Defendants' administration of benefits for prescription opioids prescribed to members of Medicare Part D plans. *See, e.g.*, *Mulready*, 78 F.4th at 1205–09 (Medicare Act partially preempted state PBM law). Medicare Act preemption is "unmistakably broad." *Id*. at 1205. Part D's preemption clause provides that the "standards established under [Part D] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency)." 42 U.S.C. §1395w-26(b)(3); *see also* 42 U.S.C. §1395w-112(g); 42 C.F.R. §423.440(a). The Medicare Act preempts both state statutory claims, *see Hous. Methodist Hosp. v. Humana Ins. Co.*, 266 F. Supp. 3d 939, 952 (S.D. Tex. 2017), and common-law claims, *see Do Sung Uhm v. Humana*, *Inc.*, 620 F.3d 1134, 1156 (9th Cir. 2010).

Here, the State seeks to impose liability on the PBM Defendants based on the selection, pricing, and formulary coverage of prescription opioids, and the implementation of utilization management tools—including by Medicare Part D plans. *See, e.g.*, Am. Compl. ¶¶281–86. But the PBM Defendants and their Part D clients administer pharmacy benefits according to regulations adopted by the Centers for Medicare and Medicaid Services ("CMS"). *See* 42 C.F.R. §423.505(i)(1) ("Notwithstanding any relationship(s) that the Part D plan sponsor may have with first tier, downstream, and related entities, the Part D sponsor maintains ultimate responsibility for adhering to and otherwise fully complying with all terms and conditions of its contract with CMS.").

4

In fact, federal regulations expressly govern the conduct that forms the basis of the State's claims. For example, CMS requires Part D sponsors to provide an "Adequate Formulary" meeting specific requirements, such as "includ[ing] adequate coverage of the types of drugs most commonly needed by Part D enrollees" and providing specific numbers of Part D drugs within certain categories or classes of covered drugs. *Id*. §§423.100, 423.120(b)(2). CMS similarly provides guidance on "establish[ing] a reasonable and appropriate drug utilization management program" and requires Part D sponsors to "[p]rovide[] CMS with information regarding the procedures and performance" of that program. 42 C.F.R. §423.153(b), (d). Ultimately, the "design of the plan and its benefits (including any formulary and tiered formulary structure)" by a Part D plan sponsor must be "approved by CMS." *Id*. §§423.120(b)(2)(iv), 423.272(b)(2).

These regulations plainly contemplate oversight and approval over the design of the very drug formularies for which the State seeks to hold the PBM Defendants liable. *See, e.g.*, Am. Compl. ¶408 (alleging PBM Defendants "intentionally designed benefit plans and standard national formularies that would maximize opioid utilization"). Although the amended complaint acknowledges that CMS provides PBMs guidance on the implementation of these tools, *id.* ¶281–83, it seeks to hold the PBM Defendants liable for that same conduct, *id.* ¶¶8–9 (seeking to impose liability on Defendants based on alleged conduct with respect to "national formularies" and "utilization management measures").

Simply put, the core of the State's liability theory is a disagreement with how formularies are designed and how utilization management controls are implemented with respect to prescription opioids. *See id.* By second-guessing the content of formularies and related PBM policies adopted under CMS standards and approved by CMS itself, the State's claims run headlong into the Medicare Act's preemption clause because the State seeks to "impose liability

for the structure of formularies which CMS requires be developed and reviewed in a specific manner." *Alaska v. Express Scripts, Inc.,* 2024 WL 2321210, at \*11 (D. Alaska May 22, 2024) (Medicare Act preempted State of Alaska's opioid-related claims with respect to "Express Scripts' administration of Part D plans"); *see also Do Sung Uhm*, 620 F.3d at 1157 (Medicare Act preempted state-law claims that "would directly undermine CMS's prior determination").

**ERISA Preemption.** ERISA preempts "any and all State laws" that "relate to any employee benefit plan . . . ." 29 U.S.C. §1144(a). "The term 'State law' is defined by the statute as including 'all laws, decisions, rules, regulations, or other State action having the effect of law . . . .' 29 U.S.C. § 1144 (c)(1). Therefore, the preemptive effect of § 1144(a) applies to all state law claims that 'relate to' an employee benefit plan, whether derived from legislative enactment or state common law." *Hall v. NewMarket Corp.*, 747 F. Supp. 2d 711, 715 (S.D. Miss. 2010) (citing *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 757–58 (5th Cir. 1990)); *see also Broussard v. Exxon Mobil Corp.*, 2025 WL 754536, at \*2 (5th Cir. Mar. 10, 2025). The State's claims are preempted for at least two reasons.

*First*, because the State's claims have a "connection with" ERISA plans, they "relate to" those plans and are preempted. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016). "[A] state law has an 'impermissible connection' with an ERISA plan" if the law "governs a central matter of plan administration or interferes with nationally uniform plan administration"—for example, if it seeks to "require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits." *Rutledge*, 592 U.S. at 86–87 (citations omitted). The State's claims here have such a "connection" because they allege that PBMs should have altered the design of formularies and utilization-management practices for health plans (including ERISA plans) to require, or forbid, the payment of specific benefits for prescription opioids. *E.g.*, Am.

6

Compl. ¶¶8–10, 13–18, 155–56. The State thus attempts to do what courts "readily and routinely" disallow, *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 192 (4th Cir. 2007): "force an ERISA plan to adopt a certain scheme of substantive coverage." *Rutledge*, 592 U.S. at 87 (quotations omitted).

*Second*, ERISA preempts the State's claims because they make "reference to" ERISA plans, such that "the existence of ERISA plans is essential to the [claim's] operation." *Gobeille*, 577 U.S. at 319–20 (cleaned up). ERISA plans represent the bulk of the PBM Defendants' clients, and those clients retain decision-making authority regarding benefit design. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 965–69 (10th Cir. 2022). But the State attacks the PBM Defendants' role in administering those plans, such as by alleging that the PBM Defendants gave prescription opioids "unrestricted, preferred formulary status" and failed to "install reasonable controls in the form of quantity limits, prior authorization requirements, or MME daily limits." Am. Compl. ¶¶191, 360, 410; *see id*. ¶¶8–10, 13–18, 155–56. The claims are thus preempted with respect to ERISA plans. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) ("[T]here simply is *no* cause of action if there is no plan."); *Hulsman v. Behav. Health Sys., Inc.*, 13 So. 3d 838, 843 (Miss. App. 2009) ("[I]f a party's claim emanates from the administration of an ERISA-regulated benefit plan, then the claim is preempted.").[2]

---

[2] The allegations in this case differ materially from those in *Alaska v. Express Scripts, Inc.*, where a court (wrongly) rejected ERISA preemption. 2024 WL 2321210, at *10. Unlike in *Alaska*, the State here alleges that the PBM Defendants "should have imposed stricter quantity limits, refill limitations, or preauthorization requirements" on prescription opioids, Am. Compl. ¶413—allegations that seek to "dictate a[] particular scheme of coverage," 2024 WL 2321210, at *10.

II.     THE STATE FAILS TO STATE A CLAIM FOR PUBLIC NUISANCE, NEGLIGENCE, OR UNJUST ENRICHMENT.

A.      **The State has not plausibly alleged a public-nuisance claim.**

To plead a viable public-nuisance claim, the State must allege that Defendants unreasonably interfered "with a right common to the general public." *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 860 (Miss. 1988); Restatement (Third) of Torts: Liability for Economic Harm §8 cmt. b (2020) ("A public nuisance arises when a defendant's wrongful act causes harm to a public right."). It must also allege that Defendants controlled the instrumentality of the nuisance at the time of alleged injury. *See Burke v. Shaw*, 59 Miss. 443, 445–47 (1882). Further, to recover the public-nuisance *damages* it seeks, the State "must have sustained harm different in kind, rather than in degree, than that suffered by the public at large." *Comet Delta*, 521 So. 2d at 861 (citing *inter alia* Restatement (Second) of Torts §821C). The State fails all three requirements.

1.      **The State has not alleged any interference with a public right.**

A "public right" is one "enjoyed by citizens as part of the public"—an indivisible entitlement shared by the community at large. *Dow v. Town of D'Lo*, 152 So. 474, 476 (Miss. 1934). An alleged nuisance need not actually affect "the entire community," but it must "interfere with those who come into contact with it in the exercise of a public right." *Comet Delta*, 521 So. 2d at 860 (quotations omitted). For example, alleging that a defendant was "storing coal in the open . . . produc[ing] windborne . . . black, greasy, airborne coal dust" is sufficient to allege a "significant interference" with the public's right to clean air. *Id.* Similarly, "[a] reduction of recreational or aesthetic use or enjoyment of [a] river" due to pollution could constitute "an unreasonable interference with" the public's right to the use and enjoyment of the waterway because the pollution diminishes the rights of every individual it encounters. *Leaf River Forest*

8

*Prods., Inc. v. Ferguson*, 662 So. 2d 648, 665 (Miss. 1995) (assuming without deciding that such conduct could "qualify as an unreasonable interference with [a] public right[]"), *abrogated on other grounds by Adams v. U.S. Homecrafters*, 744 So. 2d 736 (Miss. 1999).

Public-nuisance doctrine does not extend, however, to violations of private rights, even when widespread. *See Comet Delta*, 521 So. 2d at 860; *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (applying Mississippi law). Even many individual injuries do not constitute the violation of a public right. *See Andrews v. Enpro Indus., Inc.*, 2025 WL 837324, at *11 (N.D. Miss. Mar. 17, 2025) (dismissing public-nuisance claim where plaintiffs "d[id] not clearly allege that [they] suffered damages as members of the public exercising a public right," although they "vaguely allege[d] that they were continuously exposed to TCE as members of the community"); *see also State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 726 (Okla. 2021) ("A public right is more than an aggregate of private rights by a large number of injured people.").

Applying this distinction, many courts have refused to extend public-nuisance liability to lawful products like prescription opioids that do not interfere with the rights of, or injure, every individual they come into contact with. "Products generally are purchased and used by individual consumers, and any harm they cause—even if the use of the product is widespread and the [defendant's] conduct is unreasonable—is not an actionable violation of a public right." *Hunter*, 499 P.3d at 726 (citation omitted); *accord, e.g.*, *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004); *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 447–48 (R.I. 2008). Simply put, the "manufacture and distribution of products rarely, if ever, causes a violation of a public right as that term has been understood in the law of public nuisance." *Hunter*, 499 P.3d at 726 (citation omitted). That is consistent with the Third Restatement, which explains that "the

9

common law of public nuisance is an inapt vehicle for addressing" harms related to lawful products. Restatement (Third) of Torts §8 cmt. g.; *see Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006) (following Third Restatement in product liability case).

Although the State refers colloquially to an opioid "epidemic," *e.g.*, Am. Compl. ¶415, it does not (and cannot) allege that prescription opioids harm all "who come in contact with [them]," *Comet Delta*, 521 So. 2d at 858, 860. Prescription opioids are medicines approved by the FDA as safe and effective when taken as prescribed, *see City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 450 (S.D. W.Va. 2022), and the State concedes, as it must, that these medications have "legitimate medical purposes," Am. Compl. ¶¶154, 345. The State's claim is thus based on the alleged misuse of prescription opioids by individuals—*not* interference with a public right. *See Dow*, 152 So. at 476; *Hunter*, 499 P.3d at 727 (rejecting existence of "a public right to be free from the threat that others may misuse or abuse prescription opioids").

Were this Court to accept the State's sweeping "public right" theory, public-nuisance law "would become a monster that would devour in one gulp the entire law of tort." *Hunter*, 499 P.3d at 726 (quoting *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993)). Under the State's approach, liability would extend to myriad indisputably legal activities. Carmakers could be sued for contributing to a "climate crisis"; smartphone makers to a "social media addiction"; soda makers to an "obesity epidemic." And liability would not stop with product makers. If a PBM's administration of insurance benefits for FDA-approved medications prescribed by doctors can create public-nuisance liability, then any entity in the stream of commerce can face "unlimited and unprincipled liability." *Id.* at 725; *see also Beretta*, 821 N.E.2d at 1116 (rejecting expansion of public nuisance that "would permit nuisance liability to be imposed on an endless list of manufacturers, distributors, and retailers of manufactured products"). Banks and credit card

10

companies could face liability for issuing checks and credit cards used to pay for cars, smartphones, or soda, as could any other enterprise that an inventive lawyer can link to a lawful product claimed to contribute to a public nuisance. Simply put, the "lawful products at issue in this case cannot be a public nuisance without straining the law to absurdity." *Camden*, 273 F.3d at 540.

Although a handful of Mississippi trial-court decisions have allowed public-nuisance claims to proceed against opioid manufacturers and distributors, those decisions are unpersuasive. *See* Order, *Mississippi v. Cardinal Health, Inc.*, No. 25CI1:18-cv-00692 (Hinds Cnty. Cir. Ct. Apr. 5, 2021) (**Exhibit A**); Order, *Mississippi v. Cardinal Health, Inc.*, No. 25CI1:18-cv-00692 (Hinds Cnty. Cir. Ct. Mar. 4, 2021) (**Exhibit B**); Order, *Mississippi v. Purdue Pharma L.P.*, No. 25CH1:15-cv-01814 (Hinds Cnty. Ch. Ct. Dec. 3, 2020) (**Exhibit C**). *First*, on matters of state law, this Court is bound by "decisions of the Mississippi Supreme and Appellate Courts"—not trial-court decisions. *Rainwater v. Lamar Life Ins. Co.*, 207 F. Supp. 2d 561, 565 (S.D. Miss. 2002). *Second*, those decisions offer only cursory analysis of the State's public-nuisance claims, merely reciting the elements and allegations before concluding the counts were sufficiently pled. *See* Exhibit A at 2–3; Exhibit B at 2–3 (same); Exhibit C at 7–8. That limited analysis is irreconcilable with public-nuisance law as set forth by the Mississippi Supreme Court and the Restatements, which, as explained above, does not extend to the interferences with *individual* rights. *Third*, none of those cases extended liability to PBMs, which are far more removed from the third-party individuals allegedly injured in this case.

### 2. The State fails to allege Defendants had control of the instrumentality of the alleged nuisance.

The public-nuisance claim also fails because the State does not allege that Defendants owned or controlled the prescription opioids in question when they are alleged to have caused harm. Mississippi law makes clear that a party cannot be held liable for a nuisance unless it

11

controlled the instrumentality of the nuisance at the time of injury. *See Christmas v. Exxon Mobil Corp.*, 138 So. 3d 123, 127 (Miss. 2014) (defendant not liable for alleged nuisance arising from "something over which [it] ha[s] no control"); *Burke*, 59 Miss. at 445–46 (rejecting nuisance claim because seller of product was "in no manner responsible for the disposition made of it after he has parted with it"). That is the law in other states as well. *See, e.g.*, *Sholberg v. Truman*, 852 N.W.2d 89, 93 (Mich. 2014) ("It has been recognized in this state that control and possession are the determinative factors in the imposition of liability."); *Lead Indus.*, 951 A.2d at 449 (similar); *Traube v. Freund*, 775 N.E.2d 212, 216 (Ill. App. Ct. 2002) (similar).

The amended complaint contains one conclusory allegation that the "PBM Defendants controlled and were responsible for the operation of the instrumentality of the harm in this case— their promotion of opioid over-use and facilitation of access to opioids through their formularies and UM offerings and their mail order pharmacies." Am. Compl. ¶487.

But the State does not (and cannot) allege that PBMs take possession or control of prescription opioids when they administer the prescription-drug benefit component of health insurance plans for their clients. *See* ECF No. 31 at 1–2. Nor does (or could) the State allege that the PBM Defendants' mail-order pharmacies had the ability to revoke existing prescriptions, write new prescriptions, or otherwise control whether or when a patient is prescribed an opioid, or the strength, form, or quantity of that prescription. *See* Am. Compl. ¶¶341–53. To the contrary, the State admits that the real source of its alleged harm is the "secondary, *criminal* market" for opioids, *id*. ¶439 (emphasis added), which the State does not (and cannot) allege Defendants "controlled."[3]

---

[3] As discussed in Section II.B.2 below, the State also fails to allege that Defendants proximately caused the alleged harms, providing an independent reason to dismiss the public-nuisance claim. *Comet Delta*, 521 So. 2d at 859 ("One is subject to liability for a . . . nuisance if, but only if, his conduct is a legal cause of" the alleged interference. (citation omitted)).

**3.      The State has not alleged the requisite special injury to seek damages.**

To recover damages in a public-nuisance suit, the plaintiff must allege that it has "sustained harm different in kind, rather than in degree, than that suffered by the public at large." *Andrews*, 2025 WL 837324, at *11 (quoting *Comet Delta*, 521 So. 2d at 861); *Leaf River*, 662 So. 2d at 664–65. The State seeks damages for its public-nuisance claim, Am. Compl. ¶¶447, 456, but the only "economic harm[s]" the State alleges are the "financial resources" it has allocated to address the "secondary, criminal market" for opioids "and the increase in opioid use and opioid use disorder," *id.* ¶¶437, 439, including "increased costs of police, emergency, health, prosecution, corrections, rehabilitation, and other services" to address "the disease of addiction" and "crime associated with illegal drug use and opioid sales," *id.* ¶¶437, 439. The State alleges these "costs are over and above the State's ordinary public services," *id.* ¶439, but the State does not have a proprietary interest in the cost of public services. *See Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383, 387 & n.4 (5th Cir. 2014) (government plaintiff lacks property interest in the "provision of a public service") (citing *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 103–04 (2d Cir. 1990)). Nor are the alleged "costs" that the State seeks different from those incurred by the general taxpaying public. *See id.* at 387 (government plaintiff "cannot claim damages for general injury to the economy"). The State is thus limited to the traditional remedy of abatement to "suppress [the] public nuisance by injunctive process[.]" *Bosarge v. State ex rel. Price*, 666 So. 2d 485, 489 (Miss. 1995); *see also E. Me. Med. Ctr. v. Walgreen Co.*, 331 A.3d 380, 393 (Me. 2025) (dismissing public-nuisance claim by hospitals against opioid distributors because the alleged injuries were "no different in kind from the injury to the public").

**B.      The State has not plausibly alleged negligence.**

To state a claim for negligence, the State must allege "each of the elements of negligence: duty, breach, causation and injury." *Bolton v. Lee*, 405 So. 3d 1, 9 (Miss. Ct. App. 2023) (quoting

13

*Sanderson Farms Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017)). The State fails to establish these elements as a matter of law.

**1.      The State fails to allege any cognizable duty owed by Defendants.**

"Duty and breach of duty . . . are essential to finding negligence and therefore, must be demonstrated first." *Id.* (quoting *Sanderson Farms*, 212 So. 3d at 76). Whether a duty of care exists is a question of law to be decided by the court. *Ready v. RWI Transp., LLC*, 203 So. 3d 590, 593 (Miss. 2016). To establish duty, a plaintiff "must show . . . the existence of a duty to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury." *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004) (quotation omitted). There is "no . . . duty" to protect against the acts of third parties "absent a special relationship between the actor and the third party that imposes a duty for the actor to control the third party or absent a special relationship between the actor and the injured party that gives the injured party a right to protection." *Holland v. Murphy Oil USA, Inc.*, 290 So. 3d 1253, 1256 (Miss. 2020); *see Walton v. City of Verona*, 82 F.4th 314, 323 (5th Cir. 2023) (same).

The absence of a duty to protect the State against the unlawful conduct of third parties is fatal to the State's negligence claim. The State alleges that the PBM Defendants "assumed a duty to create formulary and UM offerings based on the health and safety of the public," Am. Compl. ¶470, and that the Mail Pharmacy Defendants had a "duty" to comply with the requirements of federal and state laws concerning the dispensing of controlled substances, *id.* ¶¶331–38. But the State seeks to hold Defendants liable for the alleged creation of an "illegal, secondary market" for opioids and the diversion of opioids "by persons with criminal purposes." *Id.* ¶427; *see id.* ¶29 ("The State . . . brings this action against the PBM Defendants for . . . contributing to the oversupply of such drugs and *fueling an illegal secondary market* that devastated the public health

14

and safety of this State." (emphasis added)). The State has not alleged (nor could it allege) the type of "special relation[ship]" that would require Defendants to protect the State against the actions of third parties wrongfully abusing, misusing, or diverting opioids. *See Hill v. Moore*, 290 So. 3d 769, 772–73 (Miss. Ct. App. 2020) ("[A] person who does not have the ability to control another's conduct should not have liability imposed upon him or her for the tortious act of that other person.") (quotation omitted); *Holland*, 290 So. 3d at 1256. PBMs adjudicating claims for insurance coverage of FDA-approved medications prescribed by doctors, and mail-order pharmacies dispensing such prescription medications, do not owe a duty to the State for alleged harms caused by those third-party patients, or by individuals further downstream.

The State also fails to plausibly allege that its alleged harms were reasonably foreseeable to Defendants and thus could create the requisite duty. *See Beretta*, 821 N.E.2d at 1126 (firearm manufacturers and distributors did not owe duty to local governments because it was not "foreseeable . . . that the criminal conduct of individuals who illegally take firearms into a particular community w[ould] result in" injuries there).[4] Instead, it asserts in conclusory fashion that the State's alleged injuries were "foreseeable and, in fact, foreseen by Defendants." Am. Compl. ¶472. But the kinds of injuries it alleges involve children exposed to opioids, loss of companionship, and other injuries far removed from Defendants' alleged conduct. *Id.* ¶457. The complaint contains no allegations suggesting that when the PBM Defendants processed claims for insurance coverage of FDA-approved prescription medications prescribed by doctors, when the Mail-Order Pharmacy Defendants filled such prescriptions, or when some Defendants provided

---

[4]    The two trial-court decisions finding, with scant analysis, that the State plausibly alleged opioid manufacturers and distributors owed a duty, *see* Exhibit A at 3; Exhibit B at 4, do not apply to Defendants, who do not manufacture or distribute prescription opioids. Indeed, PBMs that administer prescription-drug benefits for health plans are much further removed from the downstream harms the State alleges here.

data, analytics, and research services, it was foreseeable that those acts would cause the nearly limitless downstream harms the State alleges. *See infra* II.B.2. Indeed, it would radically reshape modern pharmaceutical practices to hold that PBMs and mail-order pharmacies owe a duty to every state and local government in which any FDA-approved medication that is covered by insurance processed by a PBM or dispensed by a mail-order pharmacy might be misused by patients or other third parties. Such a reshaping is "better suited for the Legislature to address." *Lopez v. Bellamare Dev. LLC*, 293 So. 3d 271, 278 (Miss. Ct. App. 2019) (quotations omitted).

> ### 2. The State fails to plausibly allege that Defendants proximately caused its alleged injuries.

The State also fails to plausibly allege that Defendants caused its alleged injuries. "[T]o incur liability when a party is negligent, that negligence also must be the proximate cause of the injury." *Bolton*, 405 So. 3d at 12 (quoting *Utz v. Running & Rolling Trucking Inc.*, 32 So. 3d 450, 466 (Miss. 2010)). "Proximate caus[ation] requires: (1) cause in fact; and (2) foreseeability." *Johnson v. Alcorn St. Univ.*, 929 So. 2d 398, 411 (Miss. Ct. App. 2006) (quotation omitted).

To allege cause in fact, the State must allege that Defendants' "act or omission was a substantial factor in bringing about the injury, and *without it the harm would not have occurred*." *Id*. (citation omitted) (emphasis added); *see Bennett v. Highland Park Apartments, LLC*, 170 So. 3d 522, 527 (Miss. Ct. App. 2014), *aff'd*, 170 So. 3d 450 (Miss. 2015) (similar). In other words, the State must allege that Defendants' actions were the "cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury[.]" *Simpson Cnty. Sch. Dist. v. Wigley*, 356 So. 3d 147, 155 (Miss. Ct. App. 2022). But the State alleges it was injured "by a wide array of actors," Am. Compl. ¶4, from "manufacturers who make the drugs" to individuals

16

who "abused, misused, and diverted" opioids "into the illegal, secondary market," where they were "obtained by persons with criminal purposes," *id*. ¶¶7, 427.

Indeed, the State's allegations regarding the PBM Defendants' role in the "opioid supply and payment chain" confirm the lack of causation. As the State alleges, "[p]harmacy benefit managers are . . . hired to negotiate rebates and fees with drug manufacturers, create drug formularies and surrounding policies, and reimburse pharmacies for patients' prescriptions." *Id*. ¶5. But the State never alleges that the PBM Defendants *mandated* health plans to adopt a particular formulary or utilization management; it acknowledges that Defendants' role was merely to "*offer*" formularies to health plans. *Id*. ¶¶14–16 (emphasis added). The State fails to allege how, but for the PBM Defendants' actions, the alleged injuries would not have occurred.

In addition, the State fails to plausibly allege that its broad injuries were foreseeable consequences of Defendants' conduct. Foreseeability "means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others." *Johnson*, 929 So. 2d at 411 (quotation omitted). "[F]oreseeable liability does not include remote possibilities." *Prairie Livestock Co. v. Chandler*, 325 So. 2d 908, 910 (Miss. 1976) (quotation omitted). Prescription opioids are medications approved by the FDA as safe and effective, *see City of Huntington*, 609 F. Supp. 3d at 450, and even the State admits they have "legitimate medical purposes," Am. Compl. ¶¶154, 345. Apart from conclusorily alleging that its alleged injuries were "foreseeabl[e]," *id.* ¶489, the State does not and cannot plausibly allege that Defendants should have reasonably foreseen that their administration of benefit plans for and licensed dispensing of FDA-approved medications would, in turn, create an "illegal opioid market," *id.* ¶486, which, in turn, would lead to downstream effects allegedly caused by "staggering rates of opioid and heroin use," such as "infants [being] born addicted to opioids," individuals "caring for loved ones addicted to or injured

17

by opioids," employers' lost "value of productive and healthy employees," and "an abundance of drugs available for criminal use," *id.* ¶457. Defendants are "not liable" for such "remote or collateral" harms. *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 867 (S.D. Miss. 2012), *aff'd*, 718 F.3d 460 (5th Cir. 2013); *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 342 (Miss. 2004) (proximate cause lacking where "alleged injury is too remote"). Considering the narrow scope of activities Defendants allegedly engaged in, the State did not and cannot plausibly allege that Defendants could have foreseen the existence of injuries this attenuated.

Other courts considering similar claims against opioid manufacturers and distributors have correctly dismissed those suits based on "lengthy, multifaceted chains of causation." *City of New Haven v. Purdue Pharma, L.P.*, 2019 WL 423990, at *3 (Conn. Super. Ct. Jan. 8, 2019) (unpublished opinion) (dismissing suit for lack of causation between manufacturing of opioids and deterioration of a city's quality of life); *see, e.g.*, *Huntington*, 609 F. Supp. 3d at 480 ("Distributors have no control over the medical judgment of doctors."); *State ex rel. Stenehjem v. Purdue Pharma L.P.*, 2019 WL 2245743, at *13 (N.D. Dist. Ct. May 10, 2019) (dismissing nuisance claim against opioid manufacturer because it could not control "how doctors prescribe its products and it certainly [could not] control how individual patients use and respond to its products"). Like the defendants in those cases, Defendants do not control how doctors prescribe opioids or how patients take them—let alone what bad actors do with them. In fact, as companies hired to "manage prescription drug benefit plans," Am. Compl. ¶11, Defendants are even further removed from the State's alleged harms.

### C.    The State has not plausibly alleged unjust enrichment.

The State also fails to plausibly allege unjust enrichment. "Unjust enrichment only applies to situations where there is no legal contract and 'the person sought to be charged is in possession

18

of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 442 (Miss. 2012) (citation omitted). The complaint must allege, in more than "conclusory fashion," that the "defendant has been unjustly enriched at the expense of the plaintiff." *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 673 (S.D. Miss. 2007) (citation omitted). It must allege that it paid the defendant or that the defendant was unjustly enriched "by retaining any money or property" that rightfully belongs to the plaintiff. *Powell v. Campbell*, 912 So.2d 978, 982 (Miss. 2005).

The State alleges Defendants "have unjustly retained a benefit to the State's detriment" by "profit[ing] and benefit[ing] from their conspiracy with opioid manufacturers and from the oversupply of opioids within Mississippi . . . ." Am. Compl. ¶¶525–26. The State does not allege that it paid Defendants but rather that it "expended substantial amounts of money in an effort to remedy or mitigate the societal harms caused by [Defendants'] conduct" and that "[t]hese expenditures," in turn, "have helped sustain [Defendants'] businesses." *Id.* ¶528; *see id.* ¶530 (alleging the State "conferred a benefit upon [Defendants] by paying for the[ir] externalities: the cost of the harms caused by Defendants' improper practices."). But the State's theory stretches Mississippi law too far. The State cites *Owens Corning*, 868 So.2d 331, for the proposition that Defendants "were unjustly enriched because they received [] profits that they should not have been permitted to receive." *Id.* ¶524. But that case *rejected* an unjust-enrichment claim where, as here, the plaintiff had not made payments to the defendants or shown that the defendants were otherwise liable for payments the plaintiff allegedly made to third parties. *See Owens Corning*, 868 So.2d at 342. Because the State has not alleged that it made any payments to Defendants and cannot show

that Defendants are liable for the costs of public services the State provides in carrying out governmental functions, the State's unjust enrichment claim fails under Mississippi law.[5]

### D.     The State has not plausibly alleged a claim for punitive damages.

The State's request for "punitive damages" similarly fails. Am. Compl. ¶496; VII(d). "[A] plaintiff seeking punitive damages must adequately plead that the defendant 'acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.'" *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 620 F. Supp. 3d 532, 543 (S.D. Miss. 2022) (quoting Miss. Code Ann. §11-1-65(1)(a)). The State conclusorily alleges that "Defendants' conduct was willful, wanton, malicious, reckless, and oppressive." Am. Compl. ¶495; *see also id.* ¶455 ("Defendants acted with malice, actual or implied, because Defendants acted with a conscious disregard for the rights and safety of other persons . . . ."). But those boilerplate allegations merely recite the elements of a punitive-damages claim and should be dismissed. *See Affordable Care, LLC v. JNM Off. Prop., LLC*, 2020 WL 3453746, at *2 (S.D. Miss. June 24, 2020) (dismissing punitive-damages claim that "contain[ed] merely a 'formulaic recitation' of the elements of a punitive-damages claim"); *Crechale v. Carroll Fulmer Logistics Corp.*, 2020 WL 4927508, at *4–5 (S.D. Miss. Aug. 21, 2020) (dismissing punitive-damages claim for failure to plead the necessary "extraordinary, egregious facts"). Further, because all of the State's claims fail, it cannot recover actual damages, which bars any recovery of punitive damages. *See Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 312 (Miss. 1999).

---

[5] The trial-court decision allowing the State's unjust-enrichment claim against opioid distributors is unpersuasive on this issue, as well. *See* Exhibit B at 8–9. Among other reasons, it contains no analysis and merely concludes, after reciting the elements and allegations, that "the Court finds that Count IV [for unjust enrichment] is sufficiently pled." *Id.*

III.    THE MISSISSIPPI CONSUMER PROTECTION ACT CLAIM FAILS.

A.    The State has not alleged a present or future unfair trade practice.

The MCPA prohibits "unfair or deceptive trade practices," and contains a list of "practices or acts . . . [that] are [] prohibited." Miss. Code Ann. §75-24-5(1)–(2). The only act the State invokes here is "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." *Id.* at §75-24-5(2)(e); Am. Compl. ¶502. The State alleges Defendants violated that provision by representing "that they design their formularies based on safety and efficacy, when in reality" they did so "to maximize their own profits"; "[p]ressuring clients to accept formularies that permitted unfettered access to opioids while concealing the PBMs' self-serving financial interest"; representing that Defendants would take certain measures "to ensure only appropriate opioid prescriptions were filled," when in reality they were not doing so; and "[p]artnering in opioid manufacturers' unfair and deceptive marketing efforts." Am. Compl. ¶502. But none of these allegations concerns "a *present or future* unfair trade practice," which is required to bring an MCPA claim. *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1187 (Miss. 2020) (emphasis added).

The "purpose of the [MCPA] is not to punish past violations. Rather, the purpose of the MCPA is to restrain or enjoin unfair methods of competition through *injunctive* relief." *Id.* at 1184 (citation omitted). "Section 75-24-5(1) makes clear that [an] action may be brought . . . only under the provision of Section 75-24-9," which, in turn, authorizes the State to bring suit only "to restrain by temporary or permanent injunction the use of such [unfair or deceptive] method, act, or practice." *Id.* (quoting Miss. Code Ann. §75-24-9).[6] Accordingly, there must be "some cognizable

---

[6] That is true even though the MCPA "also allows for the recovery of civil penalties for willful violations of Section 75-24-5." *Yazaki*, 294 So. 3d at 1184. "[M]onetary penalties may only be recovered in an action brought under Section 75-24-9," so, "[i]f there is no action for injunctive relief under 75-24-9, there is no action to recover civil penalties . . . ." *Id.* (cleaned up).

21

danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id*. (citation omitted). If the complaint fails to allege a "reasonable danger" of future conduct, the State may not use the Act to "redress completed wrongs." *Id*. at 1187.

For instance, in *Yazaki*, the Mississippi Supreme Court dismissed an MCPA claim by the State against vehicle manufacturers for an alleged "price-fixing conspiracy" because the complaint's allegations showed the "conspiracy ended in 2010" and the State could not "pursue an MCPA injunction based on past conduct." *Id.* at 1184–85. Even though the State alleged the conspiracy "continued through the filing of [the] Complaint" in 2015, "[t]he State's complaint provided no factual basis for the alleged illegal activity continuing past 2010." *Id.* at 1185, 1187. Based on those allegations, the court concluded the State "attempted to use the MCPA impermissibly to redress completed wrongs" and dismissed the claim. *Id.* at 1187.

The same is true here. Other than a handful of throw-away, conclusory allegations that Defendants "continue to violate" and "will continue to violate" the MCPA, Am. Compl. ¶¶502, 517, the State does not allege a single ongoing deceptive act or practice by Defendants. It alleges "continuing *harm*," *id.* ¶516, and cites statistics from recent years about drug overdose and death, *e.g.*, *id.* ¶¶367–72, but all of the alleged *misconduct* is stated in the past tense, *see id.* ¶¶503–17. There is no nonconclusory allegation of ongoing violations. Indeed, the latest specific *acts* alleged are from 2017 and 2018, when Defendants allegedly "implemented programs *aimed at addressing opioid overutilization and abuse*." *Id.* ¶295 (emphasis added). Given the absence of nonconclusory allegations about continuing misconduct, and the presence of specific allegations that Defendants have *ceased* any alleged misconduct, the State fails to allege a claim for injunctive relief under the MCPA. *Yazaki*, 294 So. 3d at 1178, 1185–87.

22

**B.    The State fails to plead fraud with particularity.**

The State's MCPA claim also fails because it does not plead the purported fraud with particularity. Rule 9(b) applies to any claim sounding in fraud, not just "claims of fraud." *Michael v. Boutwell*, 2015 WL 728516, at *5 (N.D. Miss. Feb. 19, 2015) (citation omitted). Thus, although this Court has previously recognized that "Mississippi does not require a finding of fraud for an act to be deemed unfair or deceptive," *Eli Lilly*, 620 F. Supp. 3d at 542, where an MCPA claim is premised on alleged misrepresentations, Rule 9(b) applies. *See Young v. Bristol-Meyers Squibb Co.*, 2017 WL 706320, at *15 (N.D. Miss. Feb. 22, 2017) (applying Rule 9(b) to MCPA claims). The complaint must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why [they] were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citation omitted).

Here, the State grounds its MCPA claim in alleged "misrepresentations," Am. Compl. ¶¶502, 504, but it does not come close to alleging the "who, what, when, where, and how" of the alleged misrepresentations. *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003) (citation omitted). While it purports to identify seven misleading acts or practices by Defendants, Am. Compl. ¶502, it does not identify a speaker or state when or where the allegedly false or misleading statements were made. *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 523–24 (5th Cir. 1993) (affirming dismissal of fraud claim where "complaint provide[d] only conclusory allegations"); *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, 2012 WL 642304, at *2 (S.D. Miss. Feb. 27, 2012) (dismissing fraud claim where plaintiff failed to identify speaker and when or where misrepresentations were made). The State also improperly alleges misrepresentations by all Defendants as a group, failing to allege anything about each Defendant's statements or conduct. Those kinds of general allegations "against numerous

23

defendants without identifying specific actions of specific individuals at specific times" are insufficient under Rule 9(b). *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008); *see also Lewis v. Miss. Farm Bur. Mut. Ins. Co.*, 2007 WL 2122469, at *4 (S.D. Miss. July 20, 2007) (dismissing claims that "generically lumped the Defendants together without identifying who allegedly said what").[7]

## IV.   THE COURT SHOULD DISMISS THE CORPORATE PARENT ENTITIES.

For three Defendants—UnitedHealth Group Incorporated, Optum, Inc., and Evernorth Health, Inc.—all the State alleges is that they are the corporate parents of other Defendants, Am. Compl. ¶¶50–61, 105–11, and that each corporate parent, "*through its executives and employees*, controls the company-wide policies" that inform its mail-order and PBM services, *id*. ¶54 (emphasis added); *see, e.g.*, *id.* ¶60 (similar, with respect to Optum, Inc.); ¶110 (similar, with respect to Evernorth). But "[i]t is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). Only under narrow exceptions like an "alter ego" theory are subsidiaries' actions imputed to their parent companies, and that requires a showing of, among other things, "*actual* control," such that the subsidiary "is merely a conduit through which the parent conducts its business." *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983) (emphasis added); *see Coombs v. Unique Refinishers, Inc.*, 2013 WL 1319773, at *3 (N.D. Miss. Mar. 27, 2013) (complaint must allege "control by the parent to such a degree that the subsidiary has become a mere alter ego or instrumentality").

---

[7] The trial-court decisions allowing the State's MCPA claims to proceed against opioid manufacturers and distributors are unpersuasive. Two of the decisions contain little analysis before concluding the MCPA claim was "sufficiently pled." Exhibit A at 4–5; Exhibit B at 8. And all three involved different allegations of "marketing and misrepresenting to the medical community" the risk of opioids through "sales," "direct-to-consumer marketing," and "unbranded marketing." Exhibit C at 5; *see* Exhibit B at 7–8 (similar).

24

The State's conclusory allegations that these entities had some control over other Defendants' policies through shared "executives and employees" (*e.g.*, Am. Compl. ¶¶54, 60, 110) are insufficient to assert liability. *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *4–5 (S.D. Miss. Aug. 29, 2022) ("the Court finds it inappropriate to pierce the corporate veil" when the State at most alleges certain defendants "share corporate officers, company policies, and stock ownership"); Order at 14–16, ECF No. 112, *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-674 (S.D. Miss. Aug. 15, 2022) (dismissing UnitedHealth Group because complaint contained only conclusory allegations "that the parent companies exercise substantial control" (citation omitted)). Because the State has alleged nothing more than standard parent-subsidiary relationships, the Court should dismiss these corporate-parent entities.

## **CONCLUSION**

For all these reasons, the Court should dismiss the State's complaint with prejudice.

Respectfully submitted: September 15, 2025.

*/s/ Jim Shelson*
Jim Shelson (MS Bar No. 9693)
CARROLL WARREN & PARKER
P.O. Box 1005
Jackson, MS 39215-1005
(601) 592-1010
jshelson@cwplaw.com

Michael Lyle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I St., N.W., Suite 900
Washington, D.C. 20005
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*/s/ Jeffrey R. Blackwood*
Jeffrey R. Blackwood (MS Bar No. 10613)
Jonathan M. Barnes (MS Bar No. 105659)
BRADLEY ARANT BOULT
CUMMINGS LLP
One Jackson Place
188 E Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000
jblackwood@bradley.com
jbarnes@bradley.com

Brian D. Boone (*pro hac vice*)
Kyle R. Hair (*pro hac vice*)
ALSTON & BIRD LLP
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
(704) 444-1000
brian.boone@alston.com
kyle.hair@alston.com

25

*Counsel for Express Scripts, Inc., Express Scripts Pharmacy, Inc., ESI Mail Pharmacy Service, Inc., ESI Mail Order Processing, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Express Scripts Specialty Distribution Services, Inc., and Medco Health Solutions, Inc.*

D. Andrew Hatchett (*pro hac vice*)
Grace Assaye (*pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000
andrew.hatchett@alston.com
grace.assaye@alston.com

*Counsel for Optum, Inc., OptumRx, Inc., OptumInsight Life Sciences, Inc., OptumInsight, Inc., UnitedHealth Group, Inc., OptumHealth Care Solutions, LLC, Optum Health Holdings, LLC, OptumHealth Networks, Inc., OptumRx Discount Card Services, LLC, Optum Perks LLC.*