**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

State of Mississippi,

        *Plaintiff*,

    v.

Optum, Inc., *et al*.

        *Defendants*.

Case No. 3:24-cv-718-KHJ-MTP

**DEFENDANTS' REBUTTAL SUPPORTING THEIR MOTION TO DISMISS THE
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.    FEDERAL LAW PREEMPTS THE STATE'S CLAIMS RELATING TO MEDICARE
      PART D AND ERISA PLANS. ................................................................................. 1

II.   THE STATE FAILS TO PLAUSIBLY ALLEGE PUBLIC NUISANCE, NEGLIGENCE,
      UNJUST ENRICHMENT, OR PUNITIVE DAMAGES. ....................................... 3

      A.    The State mischaracterizes its allegations and relies on inapposite trial-court decisions
            to support its public-nuisance claim. ................................................................ 3

            1.    The State fails to plausibly allege interference with a public right. ......................... 3

            2.    The State fails to plausibly allege Defendants controlled the instrumentality of the
                  alleged nuisance. ................................................................................ 4

            3.    The State wrongly contends it is not required to show special injury. ..................... 5

      B.    The State fails to plausibly allege negligence. ................................................. 6

      C.    The State has not plausibly alleged unjust enrichment. .................................... 7

      D.    The State fails to identify non-conclusory allegations supporting its request for punitive
            damages ............................................................................................. 8

III.  THE MISSISSIPPI CONSUMER PROTECTION ACT CLAIM FAILS. ........................ 8

      A.    The State has not properly alleged continuing misconduct. ............................... 8

      B.    Rule 9(b) applies to the State's MCPA claim, which sounds in fraud. ............................ 9

IV.   THE COURT SHOULD DISMISS THE CORPORATE PARENT ENTITIES. .................. 10

CONCLUSION.................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

C<small>ASES</small>

*Affordable Care, LLC v. JNM Off. Prop., LLC*,
  2020 WL 3453746 (S.D. Miss. June 24, 2020) ........................................................8

*Alaska v. Express Scripts, Inc.*,
  2024 WL 2321210 (D. Alaska May 22, 2024) ........................................................2

*Berry v. Armstrong Rubber Co.*,
  989 F.2d 822 (5th Cir. 1993) ........................................................3

*Bosarge v. State ex rel. Price*,
  666 So.2d 485 (Miss. 1995) ........................................................4, 6

*Burke v. Shaw*,
  59 Miss. 443 (1882) ........................................................4, 5

*Christmas v. Exxon Mobil Corp.*,
  138 So. 3d 123 (Miss. 2014) ........................................................4, 5

*Coleman v. Louisville Pants Corp.*,
  691 F.2d 762 (5th Cir. 1982) ........................................................6

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*,
  521 So. 2d 857 (Miss. 1988) ........................................................3

*Crechale v. Carroll Fulmer Logistics Corp.*,
  2020 WL 4927508 (S.D. Miss. Aug. 21, 2020) ........................................................8

*Doe v. Hunter Oaks Apartments, L.P.*,
  105 So. 3d 422 (Miss. Ct. App. 2013) ........................................................6

*Dow v. Town of D'Lo*,
  152 So. 474 (Miss. 1934) ........................................................4

*Hall v. NewMarket Corp.*,
  747 F. Supp. 2d 711 (S.D. Miss. 2010) ........................................................2

*Johnson v. SW Gaming LLC*,
  407 So. 3d 1074 (Miss. Ct. App. 2024) ........................................................7

*Lewis v. Miss. Farm Bur. Mut. Ins. Co.*,
  2007 WL 2122469 (S.D. Miss. July 20, 2007) ........................................................10

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*,
  2024 WL 2261926 (N.D. Cal. May 16, 2024) ........................................................4

*Michael v. Boutwell*,
  2015 WL 728516 (N.D. Miss. Feb. 19, 2015) .................................................................9

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
  2022 WL 18401603 (S.D. Miss. Aug. 29, 2022) ............................................................10

*Navient Corp. v. State ex rel. Fitch*,
  313 So. 3d 1034 (Miss. 2021) ........................................................................................9

*Old Time Enters., Inc. v. Int'l Coffee Corp.*,
  862 F.2d 1213 (5th Cir. 1989) ......................................................................................10

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
  868 So. 2d 331 (Miss. 2004) ......................................................................................7, 8

*PCMA v. Mulready*,
  78 F.4th 1183 (10th Cir. 2023) .....................................................................................1

*PCMA v. Wehbi*,
  18 F.4th 956 (8th Cir. 2021) .........................................................................................2

*Pearman v. Wiggins*,
  60 So. 1 (Miss. 1912) ....................................................................................................5

*Powell v. Campbell*,
  912 So. 2d 978 (Miss. 2005) .........................................................................................8

*Prescott v. Leaf River Forest Prods., Inc.*,
  740 So. 2d 301 (Miss. 1999) .........................................................................................8

*Rein v. Benchmark Const. Co.*,
  865 So. 2d 1134 (Miss. 2004) .......................................................................................7

*Rhaly v. Waste Mgmt. of Mississippi, Inc.*,
  43 So. 3d 509 (Miss. Ct. App. 2010) ............................................................................7

*Rutledge v. PCMA*,
  592 U.S. 80 (2020) .........................................................................................................2

*State ex rel. Fitch v. Yazaki N. Am., Inc.*,
  294 So. 3d 1178 (Miss. 2020) .......................................................................................9

*State ex rel. Hunter v. Johnson & Johnson*,
  499 P.3d 719 (Okla. 2021) ............................................................................................4

*U.S. ex rel. Hebert v. Dizney*,
  295 F. App'x 717 (5th Cir. 2008) .................................................................................10

iii

*United States ex rel. Doe v. Dow Chem. Co.*,
  343 F.3d 325 (5th Cir. 2003) ....................................................................................................9

*United States v. Bestfoods*,
  524 U.S. 51 (1998)..................................................................................................................10

*Wagner v. Mattiace Co.*,
  938 So. 2d 879 (Miss. Ct. App. 2006) .....................................................................................7

*Yerby v. United Healthcare Ins. Co.*,
  846 So. 2d 179 (Miss. 2002).....................................................................................................1

*Young v. Bristol-Meyers Squibb Co.*,
  2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ..........................................................................9

**STATUTES, RULES, AND REGULATIONS**

29 U.S.C. § 1144....................................................................................................................2

42 C.F.R. § 423.100 ..............................................................................................................1

42 C.F.R. § 423.120 ..............................................................................................................1

42 C.F.R. § 423.153 ..............................................................................................................1

42 C.F.R. § 423.272 ..............................................................................................................1

Cal. Civ. Code §3480..............................................................................................................4

Miss. Code Ann. § 11-1-65......................................................................................................8

Fed. R. Civ. P. 9(b) .........................................................................................................1, 9, 10

iv

## INTRODUCTION

The State's response confirms that its amended complaint should be dismissed with prejudice. First, the State admits that it challenges how PBMs develop formularies for Medicare Part D and ERISA plans, which is exclusively governed by federal law. Second, the State's public-nuisance theory would expose every entity in modern healthcare to liability for downstream criminal conduct by unrelated third parties. Third, the State cannot plausibly allege negligence or unjust enrichment because Defendants have no duty to prevent third-party misconduct that the State does not allege that they control, the State cannot allege proximate causation, and the State cannot allege that Defendants retained money belonging to the State. Fourth, the MCPA claim fails because the State cannot allege an ongoing MCPA violation or satisfy Rule 9(b).

## ARGUMENT

### I.   FEDERAL LAW PREEMPTS THE STATE'S CLAIMS RELATING TO MEDICARE PART D AND ERISA PLANS.

The State's allegations concern the PBM Defendants' administration of prescription drug benefits for their health plan clients. *E.g.*, Am. Compl. ¶¶407–21, 469–70, 502, 525–32. Most of those clients organize under Medicare Part D or ERISA, which preempt the State's state-law claims. *See PCMA v. Mulready*, 78 F.4th 1183, 1188–96 (10th Cir. 2023); *Yerby v. United Healthcare Ins. Co.*, 846 So. 2d 179, 187–88 (Miss. 2002).

***Medicare Act Preemption.*** The State tries to sidestep Medicare Part D's "unmistakably broad" preemption provision, *Mulready*, 78 F.4th at 1205, by arguing (Opp. 5) that it does not seek to "regulate[] the same subject matter for which the State seeks to impose liability." But the State concedes (Opp. 5) that CMS regulates, reviews, and approves "which drugs are included on . . . formularies" as well as "specific drug utilization management measures." *See* 42 C.F.R. §§ 423.100, 423.120, 423.153, 423.272. That goes to the core of the State's claims, which allege

1

that the PBM Defendants' formularies and utilization management failed to stem the flow of prescription opioids into Mississippi. *See* Am. Compl. ¶¶407–21, 469–70, 502, 525–32; Opp. 5–6.[1] Medicare Act preemption thus applies here because the State is attempting to "impose liability for the structure of formularies which CMS requires be developed and reviewed in a specific manner." *Alaska v. Express Scripts, Inc.,* 2024 WL 2321210, at *11 (D. Alaska May 22, 2024).

**ERISA Preemption.** The State also fails to avoid ERISA preemption, which applies to "all state law claims that 'relate to'" or make "reference to" an employee benefit plan. *Hall v. NewMarket Corp.*, 747 F. Supp. 2d 711, 715 (S.D. Miss. 2010) (quoting 29 U.S.C. §§ 1144(a)(1), (c)(1)). The State argues (Opp. 8) that it seeks only to "prevent Defendants from creating a public nuisance, operating negligently, or violating the Mississippi Consumer Protection Act," but it ignores that each of its claims is predicated on certain choices relating to utilization management and formulary placement—matters of plan administration and benefits. *E.g.*, Am. Compl. ¶413 (alleging that the PBM Defendants "should have imposed stricter quantity limits, refill limitations, or preauthorization requirements" on prescription opioids).[2] Viewed from any angle, the State's claims relate to "central matters of plan administration" and seek to "structure benefit plans in particular ways," so ERISA preemption applies. *Rutledge v. PCMA*, 592 U.S. 80, 86–88 (2020) (preemption did not apply where, unlike here, allegations did not "forc[e] plans to adopt any particular scheme of substantive coverage"). The State's reliance (Opp. 9) on *PCMA v. Wehbi*, 18

---

[1] The State is wrong (Opp. 5 n.2) that Defendants' Medicare preemption argument was limited to allegations about "formularies" and did not encompass allegations of "deceptive marketing or improper[] dispensing." Defendants argued (Mot. 12) that every claim about the "administration of benefits for prescription opioids prescribed to members of Medicare Part D plans" was preempted, including claims relating to allegations that the PBM Defendants "should have imposed stricter quantity limits, refill limitations, or preauthorization requirements." Mot. 7 n.2 (citing Am. Compl. ¶413).

[2] As Defendants previously explained (Mot. 7 n.2), these allegations distinguish the State's complaint from the complaint in *Alaska v. Express Scripts, Inc.*, which, in any event, was wrongly decided. 2024 WL 2321210, at *10 (D. Alaska May 22, 2024).

F.4th 956 (8th Cir. 2021), is likewise misplaced. That case concerned pharmacy accreditation and related pharmacy-authorized activities, not acts regarding "plan administration," benefit structure, or "substantive coverage," all of which the court acknowledged *would* give rise to preemption, and all of which apply here, as explained in Defendants' motion. *Id.* at 968–69; Mot. at 6.

**II.     THE STATE FAILS TO PLAUSIBLY ALLEGE PUBLIC NUISANCE, NEGLIGENCE, UNJUST ENRICHMENT, OR PUNITIVE DAMAGES.**

    **A.     The State mischaracterizes its allegations and relies on inapposite trial-court decisions to support its public-nuisance claim.**

The State does not dispute that, to sustain a public-nuisance claim seeking damages, it must plausibly allege (1) unreasonable interference with a public right, (2) Defendants' control of the instrumentality of the alleged nuisance, and (3) special injury. Opp. 10–20. The State contends that it adequately alleged the first two elements and that the third is not required in this case because the State seeks only "abatement *costs*," not damages. All three arguments fail.

    **1.     The State fails to plausibly allege interference with a public right.**

The State acknowledges (Opp. 11, 12) that collective violations of private rights are not a public nuisance. *See Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 860 (Miss. 1988); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993). And it concedes (Opp. 12) that "prescription opioids themselves are [not] a nuisance," there is no "public right to be free from individual injuries caused by opioid use or abuse," and "the accumulation of those individual injuries [does not] amount[] to a public nuisance." Those concessions dispose of the State's public-nuisance claim, which rests on the accumulation of alleged harm to individuals purportedly caused by an "oversupply of prescription opioids in Mississippi." Am. Compl. ¶405.

The State tries to avoid that conclusion by arguing (Opp. 11) that its public-nuisance claim "is based on the collective damage to public health, safety, peace, comfort and convenience." But the complaint alleges that "[p]rescription opioid *abuse*, *addiction*, *morbidity*, and *mortality* are a

public nuisance in Mississippi." Am. Compl. ¶406. Those are alleged harms to *individuals*, not the public. *See Dow v. Town of D'Lo*, 152 So. 474, 476 (Miss. 1934); *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 727 (Okla. 2021). Although individual injuries do not *preclude* a public nuisance, *see Bosarge v. State ex rel. Price*, 666 So.2d 485, 492 (Miss. 1995), the State's claim is premised solely on adding up discrete individual injuries caused by opioid addiction and abuse. *See, e.g.*, Am. Compl. ¶¶405–06. Conclusory allegations that Defendants' actions "interfered with the public health, welfare, and safety," *id.* ¶414, and "had severe and far-reaching" consequences for public health, *id*. ¶41, do not change the individualized nature of the nuisance alleged.

The State's cited authorities do not hold otherwise. Most are out-of-state decisions denying motions to dismiss public-nuisance claims based on other states' laws (Opp. 14–15 & n.5), some of which *statutorily* define public nuisance differently than Mississippi common law. *See, e.g.*, *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*, 2024 WL 2261926, at *8 (N.D. Cal. May 16, 2024) (statutory public-nuisance claim under Cal. Civ. Code § 3480, which requires only that the nuisance affect "any considerable number of persons"). The three Mississippi state-court denials of opioid manufacturers' and distributors' motions to dismiss are likewise unpersuasive, for the reasons Defendants previously explained. Mot. 11. The State does not cite a single appellate decision recognizing a public-nuisance claim in this context even though similar allegations have been litigated throughout the country for years. *See* Mot. 9–11. There is none.

### 2.    The State fails to plausibly allege Defendants controlled the instrumentality of the alleged nuisance.

The State's public-nuisance claim should also be dismissed because it fails to allege Defendants controlled the instrumentality of the alleged nuisance. *See Christmas v. Exxon Mobil Corp.*, 138 So. 3d 123, 127 (Miss. 2014); *Burke v. Shaw*, 59 Miss. 443, 445–46 (1882). The State claims (Opp. 17) that the "instrumentality of the nuisance" here is "Defendants' conduct in creating

4

and fueling [an alleged] *oversupply* of opioids into Mississippi," not "the opioids themselves." That is not a meaningful distinction—an "oversupply of opioids" is just a larger volume of "opioids themselves"—and, in any event, the State fails to plausibly allege that Defendants "controlled" an alleged oversupply. The State does not dispute that PBMs never possess or control prescription opioids when they process their clients' insurance claims. *See* ECF No. 31 at 1–2. Nor does the State dispute that Defendants' mail-order pharmacies cannot  control whether or how a patient is prescribed an opioid. *See* Am. Compl. ¶¶341–53. And the State ignores its own allegations demonstrating that the source of its alleged harm is the "secondary, criminal market" for opioids, *id*. ¶439, which the State does not (and cannot) allege Defendants "controlled."

The State's attempt to distinguish binding Mississippi precedent also fails. Just like the acts of "wild animals" in *Christmas*, 138 So. 3d at 125, and of "third part[ies]" in *Burke*, 59 Miss. at 444–47, the State's public-nuisance theory depends on third-party actors who misuse and divert lawful prescription opioids. *See* Mot. 12; Am. Compl. ¶439. The State's theory is just as "attenuated" (Opp. 18) as the acts in those cases and thus distinguishable from the unreasoned Mississippi trial-court rulings the State cites (Opp. 18), none of which involved PBMs or mail-order pharmacies far removed from the third-parties responsible for any alleged harm here.

### 3.    The State wrongly contends it is not required to show special injury.

The State argues (Opp. 19) that it doesn't need to show special injury because it is not a "private" plaintiff, but public-nuisance actions brought by the State have long been limited to the injunctive remedy of abatement. *Pearman v. Wiggins*, 60 So. 1, 2 (Miss. 1912). The State's argument (Opp. 20) that it "does not seek damages for past injury," only "injunctive relief and abatement" is wrong. The complaint expressly seeks "damages" and "abatement costs," asserting that "Defendants should be required to pay for the harm the State has suffered." Am.

Compl. ¶¶447, 456. Because Mississippi law limits abatement to the "injunctive process," *Bosarge*, 666 So. 2d at 489, the Court should limit the State to non-monetary injunctive relief.

**B.    The State fails to plausibly allege negligence.**

The State also fails to show that it plausibly alleged duty or causation. The State concedes (Opp. 22–23) that Defendants have no duty to protect against the acts of third parties whom they do not control. Yet it argues that Defendants "*did* have the ability to control illegal diversion of opioids by third parties." Opp. 23 (emphasis added). Not so. The State acknowledges that "[t]he opioid epidemic was created and sustained by a wide array of actors in the opioid supply and payment chain," Am. Compl. ¶4, without alleging the PBM Defendants had the ability to control any of those actors, let alone the "illegal secondary market" or acts of "persons with criminal purposes." *Id.* ¶¶29, 427. The complaint is equally bereft of such allegations for the Mail-Order Pharmacy Defendants and Defendants that provided data, analytics, and research services.

The State also argues (Opp. 21) that Defendants "voluntarily undertook a legal duty *to the State*" to "create formulary and UM offerings based on the health and safety of the public" and to comply with controlled substances statutes. Am. Compl. ¶¶331–38, 470–75. But there are no allegations that Defendants "assume[d] the duty to undertake the type of control over" prescription opioids that the State describes. *Doe v. Hunter Oaks Apartments, L.P.*, 105 So. 3d 422, 429 (Miss. Ct. App. 2013). They could not, given the number of other actors the State acknowledges were involved in manufacture, distributing, and prescribing opioids. *See* Am. Compl. ¶4. Nor does the State allege that it detrimentally relied on Defendants to perform the acts for which it now seeks to hold them liable. *See Coleman v. Louisville Pants Corp.*, 691 F.2d 762, 766 (5th Cir. 1982) (requiring detrimental reliance on assumed duty); *Wagner v. Mattiace Co.*, 938 So. 2d 879, 886 (Miss. Ct. App. 2006) (same). The only allegation the State identifies (Opp. 22) alleges that "Defendants *intended* that their actions and omissions would be relied upon"—not that the *State*

6

ever relied on them. Am. Compl. ¶401. The State also refers (Opp. 22) to vague allegations of "societal expectations," *id.* ¶¶475–76, which do not allege reliance.

Nor does the State establish foreseeability, which "is an essential element of both duty and causation." *Johnson v. SW Gaming LLC*, 407 So. 3d 1074, 1091 (Miss. Ct. App. 2024) (quotation omitted). That some of the Defendants are licensed by the State and are "sophisticated and knowledgeable" (Opp. 23) is insufficient to allege the State was a foreseeable plaintiff to whom Defendants owed a duty. *See Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004). The State argues (Opp. 26) that Defendants knew that there existed a growing opioid epidemic, that uncontrolled access to opioids posed serious risks of abuse, and that certain formulary design choices would lead to "increased prescribing." But it does not follow that Defendants caused doctors to diagnose patients with certain conditions or prescribe certain drugs based on those conditions, let alone that Defendants could have foreseen the far-flung injuries the State alleges. *See Johnson*, 407 So. 3d at 1091 (alleged injuries too remote to foreseeably result from defendant's conduct); *Rhaly v. Waste Mgmt. of Miss., Inc.*, 43 So. 3d 509, 513 (Miss. Ct. App. 2010) (similar). Indeed, the complaint alleges the PBM and Mail Pharmacy Defendants "set in motion" an attenuated chain of events far removed from their administration of prescription-drug benefits and mail-order pharmacy services. Am. Compl. ¶469. And the State's sparse allegations about the other Defendants that do not develop formularies or dispense medications fail by an even wider margin.

### C.     The State has not plausibly alleged unjust enrichment.

The State attempts to salvage its unjust-enrichment claim by arguing (Opp. 27) that "the law does not require actual payments by a plaintiff." The *absence* of payments, however, shows that the State cannot plausibly allege that "the defendant holds money which in equity and good conscience *belongs to the plaintiff.*" *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d

331, 342 (Miss. 2004) (emphasis added). Nor can the State maintain an unjust-enrichment claim (Opp. 27) by alleging that Defendants received profits from *a third party* to which they were not entitled. The State must allege that Defendants unjustly hold money that is rightfully the State's, which it cannot do. *Owens Corning*, 868 So. 2d at 342; *see Powell v. Campbell,* 912 So. 2d 978, 982 (Miss. 2005) (plaintiff failed to show defendant retained money or property that should rightfully be his).[3]

### D. The State fails to identify non-conclusory allegations supporting its request for punitive damages.

The State admits (Opp. 28) that, to state a claim for punitive damages, it must plead "actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or . . . actual fraud." Miss. Code Ann. § 11-1-65(1)(a). But it is not enough to merely recite those requirements. Am. Compl. ¶495; *Affordable Care, LLC v. JNM Off. Prop., LLC*, 2020 WL 3453746, at *2 (S.D. Miss. June 24, 2020). And the State's general allegations about encouraging use of FDA-approved prescription opioids without regard to "patient safety" or "real-time data," *id.* ¶¶14–18, 199–21, 244–54, fail to plausibly allege "extraordinary, egregious facts." *Crechale v. Carroll Fulmer Logistics Corp.*, 2020 WL 4927508, at *4–5 (S.D. Miss. Aug. 21, 2020). The State also ignores that it cannot recover punitive damages because it cannot recover actual damages. *See Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 312 (Miss. 1999).

## III. THE MISSISSIPPI CONSUMER PROTECTION ACT CLAIM FAILS.

### A. The State has not properly alleged continuing misconduct.

The State admits (Opp. 29) that it must allege facts supporting "a reasonable inference of *present or future* illegal conduct." It contends (Opp. 30) that its claims are "not limited to past

---

[3] Insofar as the State seeks to bootstrap (Opp. 28) its unjust-enrichment claim onto the recovery provisions of the Mississippi Consumer Protection Act, that effort fails because the State has not adequately pleaded an MCPA claim, let alone invoked the Act's recovery provisions. *See* Part III, *supra*.

conduct," but most of the allegations it identifies merely allege that the conduct is "ongoing." Am. Compl. ¶¶390, 411, 446, 450, 464. Others baldly allege that "Defendants have not changed their ways or corrected their past misconduct." *Id*. ¶42, 391. Those vague, conclusory allegations fail to "demonstrate a danger of present or future unfair trade practices." *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1187 (Miss. 2020)). The remaining allegations refer to continuing "damages" or "*harm*," not continuing misconduct. *See* Am. Compl. ¶¶393, 435, 437, 458, 509. The State also contends (Opp. 31) that Defendants "fail[ed] to identify" allegations that they "*ceased* any alleged misconduct." Not so. Defendants cited the State's allegation that they "implemented programs aimed at addressing opioid overutilization and abuse" in 2017 and 2018. Mot. 22 (citing Am. Compl. ¶295). That distinguishes this case from *Navient Corp. v. State ex rel. Fitch*, where the complaint alleged the defendant "remain[ed] *active*" in deceptive loan-servicing practices and had "infinitely more potential" for misconduct. 313 So. 3d 1034, 1042 (Miss. 2021).

**B.      Rule 9(b) applies to the State's MCPA claim, which sounds in fraud.**

The State's MCPA claim also fails because it does not plead fraud with particularity. The State seeks to avoid Rule 9(b) by arguing (Opp. 31–32) that "Mississippi does not *require* a finding of fraud for an act to be . . . unfair or deceptive." But Rule 9(b) applies to claims *sounding* in fraud, not just "claims *of* fraud." *Michael v. Boutwell*, 2015 WL 728516, at *5 (N.D. Miss. Feb. 19, 2015). Rule 9(b) applies here, where the State's MCPA claim sounds in fraud. *See* Am. Compl. ¶¶502, 504; *Young v. Bristol-Meyers Squibb Co.*, 2017 WL 706320, at *15 (N.D. Miss. Feb. 22, 2017).

Here, although the State's MCPA claim is based on alleged fraud, it is lacking the "who, what, when, where, and how" of the alleged misrepresentations. *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003). Indeed, the State concedes (Opp. 32) that its MCPA-specific allegations fail to identify when or where the allegedly false or misleading statements were made. Instead, the State refers (Opp. 32) the Court to "[t]he rest of the complaint, over five hundred

paragraphs," which purportedly "spell[] out in detail" the specifics of the alleged misrepresentations. But this Court is "not required to . . . sift through" the complaint to identify allegations supporting the State's claim. *Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1219 (5th Cir. 1989). Indeed, that the State cannot point to a single allegation that meets Rule 9(b) pleading standards warrants dismissal of the MCPA claim with prejudice. The State also ignores Defendants' argument (Mot. 23) that the complaint engages in improper group pleading, requiring dismissal of the MCPA claim. *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008); *Lewis v. Miss. Farm Bur. Mut. Ins. Co.*, 2007 WL 2122469, at *4 (S.D. Miss. July 20, 2007).

## IV.    THE COURT SHOULD DISMISS THE CORPORATE PARENT ENTITIES.

The State acknowledges the general rule "that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). It argues (Opp. 32) that doesn't matter because the parent entity Defendants are liable for "*directly controll[ing]*" the conduct that allegedly caused the State's harm. But the complaint alleges only that those parent entities "control[led] the company policies," which informed the PBMs' and mail-order pharmacies' actions, *e.g.*, Am. Compl. ¶¶54, 60, 110; "submitted [themselves] to [the] jurisdiction" of the court, *id.* ¶149; and shared "executives and employees," *id.* ¶¶50–61, 105–11. These allegations are insufficient as a matter of law. *See Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *4–5 (S.D. Miss. Aug. 29, 2022).

<strong><u>CONCLUSION</u></strong>

For all these reasons, the Court should dismiss the State's amended complaint with prejudice.

Respectfully submitted: October 27, 2025.

10

/s/ Jim Shelson
Jim Shelson (MS Bar No. 9693)
CARROLL WARREN & PARKER
P.O. Box 1005
Jackson, MS 39215-1005
(601) 592-1010
jshelson@cwplaw.com


Michael Lyle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I St., N.W., Suite 900
Washington, D.C. 20005
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com


*Counsel for Express Scripts, Inc., Express Scripts Pharmacy, Inc., ESI Mail Pharmacy Service, Inc., ESI Mail Order Processing, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Express Scripts Specialty Distribution Services, Inc., and Medco Health Solutions, Inc.*

/s/ Jeffrey R. Blackwood
Jeffrey R. Blackwood (MS Bar No. 10613)
Jonathan M. Barnes (MS Bar No. 105659)
BRADLEY ARANT BOULT
CUMMINGS LLP
One Jackson Place
188 E Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000
jblackwood@bradley.com
jbarnes@bradley.com


Brian D. Boone (*pro hac vice*)
Kyle R. Hair (*pro hac vice*)
ALSTON & BIRD LLP
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
(704) 444-1000
brian.boone@alston.com
kyle.hair@alston.com


D. Andrew Hatchett (*pro hac vice*)
Grace Assaye (*pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000
andrew.hatchett@alston.com
grace.assaye@alston.com


*Counsel for Optum, Inc., OptumRx, Inc., OptumInsight Life Sciences, Inc., OptumInsight, Inc., UnitedHealth Group, Inc., OptumHealth Care Solutions, LLC, Optum Health Holdings, LLC, OptumHealth Networks, Inc., OptumRx Discount Card Services, LLC, Optum Perks LLC.*

11